## L. M. Day and S. S. Prentiss *vs.* Robert Cochran.

The interest which a man has in the estate of his wife, as tenant by the courtesy initiate, is a well defined legal estate, it being a freehold estate which will exist after the death of the wife, for the lifetime of the husband, if he be the survivor.

If R. had at the time of the levy of the attachment, any interest in the premises in controversy, it was that of a tenant by the courtesy initiate, and, like all other legal estates, it was subject to be attached and sold under execution.

Tenancy by the courtesy, is an estate for life, created by the law, and it occurs where a man marries a woman who is seized at any time during coverture of an estate of inheritance, and has issue born alive, who might by possibility inherit the same estate as heir to his wife.

At common law it is necessary there should be marriage, actual seizin of the wife, issue, and death of the wife, to create such an estate—the estate is initiate on issue had and consummated on the death of the wife.

Upon the death of H., Mrs. R. had a right, by the express terms of the statute, to enter upon the premises, and to hold and enjoy them according to the extent of the title.

It is well settled, that where a party has gone into possession of land under a legal title, and after his right has expired, holds over; his possession continued, will not be regarded as adverse to the party entitled to the reversion. *Held,* that H. and B., holding over after the death of H. and B., they became tenants at sufferance, and their possession was not hostile, or adverse to the right of the reversioners.

Our statute (Hutch. Code, 615) is very explicit on this point, besides the general law in relation to it, which precludes the parties who hold possession of the premises under the deed from H., P., and G., from setting up that possession as adverse to the title of Mrs. R.

Actual seizin, or seizin in fact, was necessary, according to the strict rules of the common law.

It is now the settled law in England, that an entry in all cases, is not necessary to an actual seizin in deed, for if the land be in lease for years, courtesy may be without entry or receipt of rent; the possession of the lessee being the possession of the husband and wife.

The law in regard to the tenure by courtesy, is still more liberal in New York, where it has been held, that if a wife be the owner of wild and uncultivated land, not held adversely, she is deemed seized in fact. *Held,* a more stringent rule will not be applied in this State.

The case at bar comes completely within this rule. *Held,* that Mrs. R. was seized in law of the premises, and they were not held adversely, and that H. and B., after the death of H., held as tenants at sufferance to her.

Day et al. *v.* Cochran.

The relation of landlord and tenant existed between them; hence their possession was her possession, and being constructively seized in fact, an actual entry was not necessary, in order to entitle R. to his courtesy in the premises.

IN error from the circuit court of Adams county; Hon. W. P. Harris, judge.

Adam Bower owned in fee simple certain property described in the declaration. He died in 1834, leaving three daughters, Mary, Martha, and Sarah. Mary married William Haile. Martha married William M. Phipps. Sarah married John Gibson. In 1835, Holton and Barlow went into possession of said property, under an agreement or contract for title with Phipps, Gibson, and Haile, and their respective wives as above; and subsequently, in the same year, said Phipps, Gibson, and Haile executed a deed, which was signed by their respective wives, and by them, to said Holton and Barlow of said property, which conveyed whatever marital interest they had, but did not convey the fee simple interest of their respective wives. In September, 1838, Haile, the husband of Mary, died, and in the fall of 1839 she intermarried with Charles Rice. In 1839, Phipps, the husband of Martha, died, and she remains a widow. After the intermarriage of Charles Rice with Mary, an action of ejectment was instituted on the 19th February, 1840, in the name of Charles Rice, in right of his wife Mary, and in the name of Mary Rice, who is one of the heirs of Adam Bower, deceased, and in the name of Martha Phipps, who is one of the heirs of Adam Bower against the Agricultural Bank et al., and other persons who claimed by mortgage from Holton and Barlow; verdict was rendered for the plaintiff at the November term, 1843, of the United States circuit court at Jackson. The cause was removed by writ of error to the Supreme Court of the United States, and the judgment of the circuit court was affirmed in 1846, at the January term. The execution of the writ of possession was enjoined. At the May term, 1847, of the United States circuit court, the injunction was dissolved; a writ of possession then issued, and on the 21st day of May, 1847, the said writ of possession was executed by putting the defendant, L. M. Day, into possession of two undivided thirds

of said property which descended to said heirs; the other third remained in possession of said Holton and Barlow, and said mortgagees, Gibson and wife not having joined in said ejectment suit. Said Holton and Barlow, and those claiming under them as above, from the time they went into possession under said agreement, and after the execution of said deed as above to them, claimed a fee in the whole of said land under said agreement and deed, and continued in possession, so claiming until the affirmance by the Supreme Court of the judgment of the circuit court, and after that, by virtue of their injunction aforesaid, they still retained the possession and control of said property, until the said injunction being dissolved, the writ of possession was executed as aforesaid, on the 21st May, 1847, by putting Day in possession as aforesaid, who still remains in such possession. In 1840, before the institution of said ejectment suit, said Martha Phipps being then a widow, executed a quitclaim deed of her one third of said property to said Mary Rice. The demise in ejectment was laid on the 1st of December, 1839.

The plaintiff's title is as follows: On the 18th day of March, 1846, an attachment was levied on Charles Rice's interest in the property in question, (supposed to be a right of tenancy by courtesy in two thirds of the property,) if any such right be had at the suit of *Mark Isod, use, &c.* v. *Charles Rice.* Judgment was entered upon said attachment in the circuit court of Adams county, at the November term, 1846, against said Charles Rice for the sum of $1,147.89. *Venditioni exponas* issued on said judgment returnable to the May term, 1847, of said circuit court, and the supposed interest of Charles Rice was duly sold to Robert Cochran, the plaintiff in this suit, on the 5th day of April, 1847, for $500, and deed from sheriff Newman duly executed and delivered, purporting to convey to the purchaser any and all interest the said Rice had in said property at the date of said levy. It is admitted that the said Charles, and Mary, the wife of said Charles, are still alive. It is admitted that Charles Rice and Mary, his wife, had children of their marriage before the levying of said attachment.

The court below gave judgment for the plaintiffs, for two hirds of the premises sued for.

Day et al. *v.* Cochran.

*L. Madison Day*, for appellant.

It is now a settled principle of law, that a husband cannot have tenancy by the courtesy initiate, where the property is held adversely during the coverture. 1 How. S. C. R. 54, 55; 3 Bouv. Bac. Ab. 13, and authorities there cited.

There must be an actual seizin to entitle the husband to a tenancy by the courtesy. 4 Kent, Com., 4th ed., 27, 28, 29; Law Rep., June No., 1851, pp. 61, 70, and authorities there cited; 1 How. S. C. Rep. 54, 55; 2 Bl. Com. 127. In the 4th volume, page 29, of his Commentaries, Chancellor Kent says, if the wife " be owner of waste and uncultivated lands, not held adversely, she is deemed seized in fact, so as to entitle her husband to his right of courtesy." And he immediately after gives the reason, which is as follows: " The title to such property draws to it the possession; and that constructive possession continues in judgment of law until an adverse possession be clearly made out; and it is a settled point in our courts that the owner of such lands is deemed in possession, so as to be able to maintain trespass for entering upon the land and cutting the timber."

This is a full answer and explanation to all the authorities cited on the other side, and, indeed, they are all referred to in note c, by the distinguished chancellor. The very nature of the lands made it impossible that there should be a *pedis possessio*.

But no authority has he produced, and it is believed none such exists, where it has ever been held that there must not be an actual seizin. True, there are some authorities in Connecticut which, to a superficial observer, might seem to sustain the converse of this doctrine.

" The law of courtesy, (says Chancellor Kent,) in Connecticut, is made to symmetrize with other parts of their system, and in that State, ownership without seizin is sufficient to govern the descent or devise of real estate." 4 Kent, Com., 4th ed., 30.

Such is not the law of this State; consequently the decisions from Connecticut have no application, or if they do, they are clearly in our favor, as it is only the peculiarity of their system that has induced the departure from the common law in this

Day et al. v. Cochran.

respect. The marital rights at common law only attach to property in possession. 9 Cow. 230.

That the property in controversy was held "adversely" until the 21st May, 1847, there can be no doubt. 5 Pet. 320–356; 18 J. R. 40–44; Ib. 355; 10 Ib. 165; *Den* v. *Alpough*, 2 Penn. 446. See 16 Pet. 25–54; 9 Missouri, 490.

An entry under a color or claim of title constitutes an adverse possession. 18 J. R. 355; Ib. 44; 10 Ib. 174.

And it is not necessary for this purpose that the title under which the entry is made should be good and valid. 18 J. R. 355; 9 Wend. 511; 8 Cow. 589, 596; 3 Pet. 320; 18 J. R. 44; 9 Cow. 556, 557.

Even a possession under an executory agreement for title may be adverse. 9 Cow. 536, 537.

And where a mere trespasser without any claim or pretence of title to land holds the same adversely to the title of the true owner, it is an ouster or disseisin of the latter. 5 Pet. 354.

So where a person enters into lands under a deed or title, his possession is construed to be coextensive with his deed or title; and although it may turn out to be defective or void, yet the true owner will be disseized to the extent of the boundaries in such deed or title. 8 Cow. 589; 5 Ib. 483; 13 J. R. 118; 18 Ib. 355; 5 Pet. 354; 18 J. R. 44. See also 9 Cow. 557.

In 18 J. R. 44, the court says: "In *Smith* v. *Lorillard*, (10 J. R. 356,) Kent, C. J., said, that after a continued possession for twenty years, under pretence or claim of right, the actual possession ripens into a right of possession which will toll an entry;" and in *Smith* v. *Burtis*, 9 J. R. 180, Spencer, J., said, (Van Ness, J. and Yates, J. concurring,) that "it never had been considered necessary to constitute an adverse possession, that there should be a rightful title." Whenever this defence is set up, the idea of right is excluded; the fact of possession, and the *quo animo*, it was commenced and continued, are the only tests. And in *Jackson* v. *Ellis*, 13 J. R. 120, the court said that "it had been repeatedly ruled in this court, that an entry under a claim or color of title is sufficient to constitute an adverse holding. It is not necessary for this purpose that the title

23 *

under which such entry is made should be a good and valid title." 2 Caines, 183.

In the case of *Dennis* v. *Heath*, 11 S. & M. 206, this court held expressly that a recovery in ejectment is not a breach of the covenant of warranty. 11 S. & M. 218. See also 7 J. R. 376; Mart. & Yerg. 55.

It does not, then, destroy or terminate the adverse possession; for if it did, it would be a breach of the covenant of warranty.

The case of *Elsworth* v. *Cooke*, 8 Paige, Ch. R. 646, will be relied on, as sustaining a different principle from that of *Dennis* v. *Heath*, just cited, as the Chancellor says: " The recovery in ejectment might have constituted a seizin in law, if the wife had died before the execution of the writ of possession. But if the recovery in ejectment was not sufficient, the judgment in partition, settling the rights of all the parties, was sufficient." Such being the language of the chancellor, it is hardly to be supposed this court will overrule the principle of its own judgment in *Dennis* v. *Heath*, 11 S. & M. R. 206.

And, moreover, the Supreme Court of New York, in the recent case of *Tayloe* v. *Gould et al.*, says, that " to entitle the husband to his courtesy, the wife must be seized in fact and in deed. It is not sufficient that she has a seizin in law of an estate of inheritance." Law Rep., June No., 1851, p. 70, and filed with this brief, citing 4 Kent, 29; 5 Cow. R. 74, 98; 13 J. R. 260; 16 J. R. 96, and many others.

We respectfully solicit the attention of the court to this late case in New York, as well as its own decision in *Dennis* v. *Heath*, 11 S. & M. R. 206.

From the foregoing authorities, it is very clear that the mere recovery in ejectment of itself does not constitute or give a seizin, and that the adverse possession continues until the execution of the writ of possession, or the party makes an actual peaceable entry. The judgment simply authorizes the sheriff to put him in actual possession.

The possession, then, of Holton and Barlow, and those claiming under them, having been adverse, and there having been no entry until the execution of the writ of possession in May, 1847,

Day et al. v. Cochran.

which was long after the attachment and sale, said attachment and sale are void; consequently, no title passed to the purchaser, because the possession at the time, and during the marriage, was adverse, and so continued until the execution of said writ of possession.

*Eustis*, for appellee, contended,.

1st. That Charles Rice was, at the date of the levy, tenant by courtesy initiate, of two thirds of the property described in the declaration.

2nd. That the tenancy by courtesy initiate, is a legal estate in the land, and passed by the sheriff's deed to the plaintiff below.

The common law requisites to tenancy by courtesy, are marriage, seizin of the wife, issue, death of the wife. 1 Cruise, Dig. 146. Until death of the wife, the husband is tenant by courtesy initiate.

Tenancy by courtesy initiate is a legal estate in the land. *Adair* v. *Lott*, 3 Hill, 186; *Elsworth* v. *Cooke*, 8 Paige, 643; *Van Duzer* v. *Van Duzer*, 6 Ib. 366; *Schemerhorn* v. *Miller*, 2 Cow. 439; 15 Pick. 23; 16 Ib. 260; 17 Ib. 438.

It is recognized by our statutes. H. & H. 644.

It is sold under execution in New York, Massachusetts, and in Pennsylvania. *Roberts* v. *Whiting*, 16 Mass. 189; *McKee* v. *Prout*, 3 Dallas, 488; 1 Yeates, 428, and cases first above cited.

Doubtful whether in this State any actual seizin is necessary. *Davis* v. *Mason*, 1 Peters, 503; 4 Day, 298; 8 Johns. R. 262, (Chancellor Kent); 1 Stew. 590.

By our statute, the sheriff sells all the right, title, and interest and claim of the defendant, either in law or equity. How. & Hutch. 644, § 48.

The right of a party, holding under a bond for title, was sold under execution, and the sale sustained by the high court. *Thompson* v. *Wheatley*, 5 S. & M. 499.

The language of our dower act is " seized and possessed." Yet our court has said, that actual or constructive seizin is sufficient. *Ware* v. *Washington*, 6 S. & M. 740.

Chancellor Kent, in 8 J. R. 270, cites and approves the case of *Sterling* v. *Penlington*, from Viner, and says, after a review of authorities: " These cases show that actual entry, or *pedis possessio*, is not absolutely necessary, and that if the party is constructively seized in fact, it will be sufficient."

It is admitted, that, at common law, actual seizin by the wife during marriage was a requisite. But see *Davis* v. *Mason*, 1 Peters, 507, where the court say, that the common law, even in the time of Lord Coke, had begun to untrammel itself of the rigorous rule.

In this case, the title of Rice's wife to two thirds of this land was complete without entry. It descended to her from her father. Her first husband, with her assent, alienated it by deed, good during the life of the first husband, and put the purchaser in possession. This act of the first husband did not disseize her. Why? Because we have a statute expressly to prevent such disaster. How. & Hutch. 359, § 71. After the death of Phipps and Haile, the first husbands, Holton and Barlow re-remained in possession, holding over.

This holding over was not an adverse possession. *Varick* v. *Jackson*, 2 Wend. 203; *Jackson* v. *Cairns*, 20 J. R. 305; *Jackson* v. *Rogers*, Caine's Cases, 314. Holton and Barlow went into possession under the marital rights of the first husband; after the death of these husbands, they remained in possession as tenants at sufferance. They did not begin to hold adversely until ejectment brought, which was after the marriage with Rice. There was, therefore, in fact, actual *seizin*, for tenancy at sufferance, like all other tenancies, is the seizin of the land-lord.

Tenant for life, holding over, is tenant by sufferance. 2 Black. Comm. 149; 6 Hill, 194; 20 J. R. 301; 2 Wend. 166; Adams, in Eject.

There is another way still, in which we can show a sufficient seizin in Mrs. Rice, after her marriage with Charles Rice. It is this. Gibson and wife, who have never disputed nor disturbed the possession of Holton and Barlow, as to the one-third derived from them, were tenants in common, or coparceners, with the other two sisters. The entry and possession of one tenant

Day et al. *v.* Cochran.

in common, is the entry and possession of the others.    Nothing terminates it but actual ouster by one tenant in common of his co-tenant.    Now there is no pretence that this ouster took place until ejectment brought after the marriage.    Upon this view of the case, see an interesting case of *Sterling* v. *Penlington* (from Viner, opinion of Lord Hardwicke), cited with approbation by Chancellor Kent, in the case of *Jackson* v. *Sellick*, 8 J. R. 270.

In that case, a daughter was entitled to enter upon the death of her brother as tenant in common with her mother.    She applied to enter, and was resisted by her mother.    Pending the litigation, the daughter died.    Notwithstanding the daughter died without having effected the entry, the claim of the husband, as tenant by the courtesy, was allowed.    We have thus shown, 1st. That the wife had actual seizin, upon descent cast before her first marriage, and that the alienation by her first husband did not work a disseisin, because of our statute.    2d. That the purchasers from the first husband, holding over, were mere tenants at sufferance, holding under the wife, until ejectment brought by Rice against them after the second marriage. 3d. That the possession of Gibson's third, on the doctrine of co-tenancy, is an actual seizin of the co-tenant, Rice and wife.

But, we may well ask, what right has Rice to say that he was never tenant by the courtesy, when he has recovered in ejectment upon that very title with a demise laid in December, 1839 ?    He was co-plaintiff upon that title, together wit hhis wife and Mrs. Phipps, and Mrs. Phipps having conveyed her interest to Mrs. Rice, he would unquestionably be entitled to the whole proceeds of an action for mesne profits up to the date of the levy.

In an action for some mesne profits, the confession of entry by the defendant in ejectment is sufficient to enable the plaintiff to recover.    *Brown* v. *Galloway*, 1 Peters, Cir. Ct. R. 261.

The record in ejectment is evidence of title from the time of demise laid.    4 Com. 329; 4 Marshall, 388, new series.

Mrs. Phipps's interest vested in Mrs. Rice before our levy.

The laws in relation to the rights of married women do not affect the case. *Baynton* v. *Finnall*, 4 S. & M. 192.

The court need have no apprehension that there is any hardship in this case against Rice and wife. We ask their attention to the facts disclosed in the original ejectment suit, 4 H. U. S. R. 224, which show what an iniquitous speculation has been made by this second husband, setting aside a conveyance of his wife, after full value received and vast sums expended by the purchasers in improvement. Such are the risks run in the employment of stupid or careless scriveners.

By way of conclusive answer to the point made by plaintiff in error, that the possession of Holton and Barlow was that of persons claiming a fee, and, therefore, adverse, the court will always presume the possession of an estate to be legal until the contrary is proven.

Lord Denman.—" If the persons actually in possession could be shown to have held under him through whom the plaintiff claims, the possession of the former might be regarded as the possession of the latter." *Doe* v. *Bramston*, 3 Adol. & Ellis, 63; 30 Com. Law R. 31; *Doe* v. *Hartrow*, Ib. 67, p. 32.

*Doe* v. *Surtees*, 5 Barn. & Ald. 687, is a very strong case—ejectment by mortgagee upon a special verdict; more than twenty years had elapsed since default in payment of the money, and the mortgagor had, in the mean time, levied a fine on the premises; and no payment within that time had been made, nor any other fact to recognize the title of the mortgagee. Judgment for plaintiff, and statute of limitations did not run.

Abbott, C. J.—" I am of opinion that this must be considered as an occupation by the permission of the mortgagee."

Bayley, J.—" I am of the same opinion. The argument proceeds on the ground that the mortgagor was in possession by wrong; but the special verdict does not find a wrongful possession." 7 Com. Law, 233; *Doe* v. *Hull*, 2 Dowl. & Ryl. 38; 16 Com. Law, 71.

Abbott, C. J.—" Mr. Hull did not take possession wrongfully; he only wrongfully continued in possession. He came

Day et al. *v.* Cochran.

in under right and title, which remained good during the life estate of Souter's widow, but ceased at her death; and from that period he continued in possession wrongfully. But what is the effect of that? No more than that he is tenant by sufferance to Souter, who permitted him for a period to remain in possession. I know of no authority which says that a mere wrongful possession divests the estate of the party against whom the possession is adversely held."

Bayley, J.—" I am of the same opinion. In order to bar the power of devising a right of entry, there must be an actual disseisin of the devisor; a mere adverse possession will not suffice; he must be completely ousted of the freehold. The relation of Hull to Souter is that of landlord and tenant; the former was tenant by sufferance to the latter from the moment of Mrs. Souter's decease. Mr. Hull was only a disseizor in one way, namely, at the election of Souter. See *Smith* v. *Polk,* 3 Barn. & Adol. 738; 23 Eng. Com. Law; 4 Johns. R. 156; 1 Johns. Ca. 123.

Spencer, J.—" The plaintiff must be regarded as tenant by sufferance, since he entered by Green's permission, and continued in after Green's right to the possession was at an end. A tenant at sufferance cannot maintain trespass against his landlord, for as against him he has no legal right of possession." 4 J. R. 156.

If a parcener or joint tenant convey his part to A., he and the other parcener or joint tenant are tenants in common. 4 Com. Dig. 104, vol. 4. There must be an actual ouster by one tenant in common to entitle his co-tenant to maintain ejectment against him. 4 Comyn's Dig. 114; 5 Burrows, 2608. If the husband, after issue, makes a feoffment, the feoffee shall hold during the life of the husband. 4 Comyn's Dig. 58; 3 Dall. 489. For, says Lord Coke, that the estate, at the time of the feoffment, was an estate of tenancy by the courtesy initiate, and not consummate. The case is that published by Cruise, vol. 4, p. 147. If a man marries a woman seized in fee, is disseized, and then has issue, and the wife dies, he shall enter and hold by the courtesy. The wife is not dead, but during her life the tenancy is initiate.

Day et al. *v.* Cochran.

Mr. Chief Justice Smith delivered the opinion of the court.

This was an action of ejectment tried in the circuit court of Adams county. A special verdict was returned by the jury, in which the following facts are found. Adam Bower, who was the owner of the premises in controversy, died in 1834, leaving three daughters, Mary, Martha, and Sarah. Mary was married to Wm. Haile, Martha to Wm. M. Phipps, and Sarah to John Gibson. In 1835, Holton and Barlow went into possession of the premises under an agreement for title made with these parties; and subsequently, in the same year, received a deed executed by Haile, Phipps, and Gibson, and signed by their respective wives. By this deed, the interest or estate held by these parties, in virtue of their respective marriages, was conveyed to Holton and Barlow; but, as to their wives, the deed was inoperative. In September, 1838, Haile, the husband of Mary, died; and in the fall of 1839, she intermarried with Charles Rice. In 1839, Phipps, the husband of Martha, died; and she was a widow at the date of the trial.

On the 19th February, 1840, an action of ejectment was instituted in the circuit court of the United States, at Jackson, by Charles Rice and his wife Mary, and Martha, the widow of William M. Phipps, deceased, for the recovery of the premises in question, against the Agricultural Bank, and other persons who claimed under mortgage from Holton and Barlow. Gibson and wife did not join in this action, and verdict and judgment were rendered for the plaintiffs at the November term of said court in 1843. The cause was removed thence, by writ of error, to the Supreme Court of the United States, in which the judgment was affirmed at the January term thereof in 1846. The execution of this judgment was suspended by an injunction, until the May term of the said circuit court in 1847, when the injunction was dissolved. Process having issued on this judgment, it was executed on the 21st of May, by putting L. M. Day, one of the plaintiffs in error, into possession of two undivided thirds of said property; the other third remaining in possession of said Holton and Barlow and their mortgagees, who, from the date of the deed from Haile, Phipps, and Gibson, claimed a fee in the whole of the land thereby attempted to ab

Day et al. *v.* Cochran.

conveyed, down to the time when the writ of possession was executed, by putting the said Day into possession, who still retains it. In 1840, but before the institution of the suit, Martha, the widow of Phipps, executed a quitclaim deed of her one third of the property to Mary, the wife of Charles Rice. The demise in ejectment was laid on the 1st December, 1839.

An attachment, at the suit of Mark Isod, use, &c., against said Rice, was, on the 18th of March, 1846, levied upon the interest of the latter in the property in controversy; that interest was supposed to be the right of tenancy by courtesy in two thirds of the property acquired by Rice, in virtue of his marriage with Mary Haile. Rice and his wife Mary were alive at the date of the trial, and had children of their marriage born before the levy of the attachment. Judgment in the attachment suit for $1,147.89 was entered against Rice at the November term of the circuit court of Adams county in 1846. A *venditioni exponas* issued upon the judgment; and the supposed interest of Rice was, on the 5th of April, 1847, sold to Robert Cochran, the plaintiff in the action below, for the sum of $500. A deed from the sheriff of Adams county to Cochran was duly executed, which purported to convey to the purchaser "any and all interest which said Rice had in the said property at the date of said levy."

Upon the special verdict, establishing these facts, judgment was rendered for the plaintiffs in ejectment; and the case is brought before us by writ of error.

For the plaintiffs in error, it is insisted, that Rice, at the time of the levy of the attachment, possessed no interest or estate in the premises which was subject to seizure and sale under execution. If this position is sustained by the law arising upon the facts, the judgment was erroneous, and must be reversed, as the title of the plaintiffs' lessor rests exclusively upon the sale and conveyance made by the sheriff to him. It becomes, therefore, necessary to determine what was the character of the interest or estate, if any, which was vested in Rice at the date of the levy of the attachment, and whether such

interest, if found to exist, was the subject of seizure and sale under execution.

The interest which a man has in the real estate of his wife, as tenant by the courtesy initiate, is a well defined legal estate. It is a freehold estate, which will exist after the death of the wife, for the lifetime of the husband, if he shall be the survivor. 1 Cruise, Dig. 146; 4 Kent, Com. 29.

From the facts recited in the verdict, there can be no doubt that if Rice, at the time of the levy of the attachment, possessed any interest in the premises in controversy, it was that of a tenant by the courtesy initiate; and we have no hesitation in saying that, like all other certain and vested legal estates, it was subject to be attached and sold under execution. It remains, then, to be ascertained, whether such an interest was vested in Rice at the date of the levy of the attachment.

Tenancy by the courtesy is an estate for life created by the act of the law. It occurs where a man marries a woman who is seized at any time during coverture of an estate of inheritance, and has by her issue born alive, and which might by possibility inherit the same estate, as heir to the wife.

By the common law, four things were requisite to the existence of this estate, namely, marriage, actual seizin of the wife, issue, and death of the wife. The estate is initiate on issue had, and consummate on the death of the wife. 4 Kent, 28.

In this case, the marriage, and birth of issue are admitted; but it is insisted, that it is distinctly shown, by the facts of the verdict, that Mrs. Rice never had, at any time during the coverture, and prior to the levy of the attachment, actual seizin of the land in dispute. Hence it is contended that the marital rights of Rice had not then attached.

The deed of conveyance from Haile, Phipps, and Gibson, under which Holton and Barlow claimed title and held possession after Haile's death, did not work a discontinuance of the inheritance possessed by the wives of the respective grantors in the premises conveyed. Holton and Barlow acquired no seizin as against the reversionary interests of the *femes covert*, nor any right of possession as against them. Upon the death of Haile,

Mrs. Rice had, by the express terms of the statute, (Hutch. Code, 615,) the right to enter upon the premises, and to hold and enjoy them, according to the extent of her title. The title of Mrs. Haile and Mrs. Phipps to their respective third parts of the premises being perfect by the descent cast upon them, and which, being unaffected by the said conveyance, upon the death of their husbands, remained legally seized of the premises, having a present right of entry into the same. But it is said, that the possession of Holton and Barlow, which was continued from the time they went into possession under a contract to purchase, until the execution of the writ of possession, was hostile to their right, and, therefore, adverse. Hence it is contended that, although the legal seizin may have been in Mrs. Rice, yet, as there was no entry or *pedis possessio* taken of the premises, Rice's courtesy never vested. This conclusion is doubtless correct, according to the strict rules of the common law, and the doctrine recognized in several of the States, if the possession of Holton and Barlow were in fact and law adverse.

These parties, as we have seen, went into possession originally under a contract for the purchase of the property, and afterwards took a deed in fee simple, but which in fact conveyed only the interest of Haile, Phipps, and Gibson, who had but a life estate in the premises. Haile and Phipps dying, they continued in possession of the whole of the property, still claiming it as their own. But we apprehend that this does not amount to an adverse possession, much less could it be construed into a disseisin of the reversioners, unless they had elected to consider it so. It is well settled that, where a party has gone into possession of lands under a lawful title, and, after his right has expired, holds over, his possession, thus continued, will not be regarded as adverse to the party entitled to the reversion. "For being once in by a lawful title, the law, which presumes no wrong in any man, will suppose him to continue upon a title equally good." 2 Black. Com. 149, 150; *Varick* v. *Jackson*, 2 Wend. 166; *Jackson* v. *Cairns*, 20 J. R. 301; *Doe* v. *Hall*, 2 Dow. & Ry. 38. Holton and Barlow, holding over after the death of Haile and Phipps, became tenants

at sufferance. Their possession was not tortious as regarded the true owners of the reversion, and was consequently not adverse or hostile to their right. 2 Black. 150; 2 J. R. 301. If, upon the general law, there could be any doubt that the possession in this case was not hostile, it is believed the statute above referred to dispels it. It provides that no feoffment, fine, or other act, suffered or performed by the husband only, during coverture, of any lands, tenements, or hereditaments, being the inheritance or freehold of his wife, shall work any discontinuance thereof, or prejudice or affect the said wife or her heirs; but the wife, or her heirs, may, after the death of the husband, lawfully enter into such lands, tenements, and hereditaments, and hold and enjoy the same, according to her or their title. Hutch. Code, 615. Certainly this language is sufficiently explicit. It precludes the parties who hold possession of the premises, under the deed from Haile, Phipps, and Gibson, from setting up that possession as adverse to the title of Mrs. Rice.

Assuming, then, that the legal seizin was in Mrs. Rice at the death of Haile, and that the premises were not held adversely, was it necessary that an actual entry should have been made, or that Mrs. Rice should have been seized in fact and in deed, in order to have entitled Rice to his courtesy?

As above remarked, actual seizin, or seizin in fact, was essential, according to the strict rules of the common law. This principle, doubtless, grew out of the ancient law of disseisin, by the operation of which the tenant of a freehold who was disseized was thereby actually divested of his estate in the land, and that estate reduced to a mere right. So that the disseizor, dying, could not be counted as an ancestor; for, having but a bare right of entry, and not seizin, he was not a root or stock whence an inheritance by right of blood could be derived. 2 Bl. Com. 209. Hence, say the court in *Davis* v. *Mason*, 1 Peters, 507, " As it relates to the tenure by courtesy, the necessity of entry grew out of the rule which invariably existed, that entry must be made, in order to vest a freehold; and out of that member of the definition of the tenure by the courtesy which requires that issue should be had capable of inheriting." The reason for the rule does not, it is apprehended, exist in this State.

Day et al. *v.* Cochran.

Even in England, the courts have been struggling for more than a century to untrammel themselves from the rigor of the ancient law, and have essayed to sustain the right of the husband to his courtesy in the estate of his wife in every case in which there was not an adverse possession. Thus, in *De Grey* v. *Richardson*, 3 Atk. 469, it was holden that the possession of a lessee under a lease reserving rent was an actual seizin of the husband, so as to entitle him to a life estate in the lands as tenant by the courtesy, although he neither received nor demanded rent during the life of his wife. Also, in the case of *Stirling* v. *Penlington*, cited by Chancellor Kent in *Sellick* v. *Jackson*, in 8 J. R. from 3 Eq. Cases, Ab. 730, where the wife was entitled to an undivided third part of the premises as the heir of her brother, but was kept out of possession during the continuance of the coverture by the other tenant in common, who claimed possession for the brother of that third of the estate, upon the supposition that he was still living, it was held there was a good constructive possession to entitle him to a life interest in that part of the estate as tenant by the courtesy. And it is now the settled law in England, that an entry in all cases is not necessary to an actual seizin, or seizin in deed for, as in the case of *De Grey* v. *Richardson*, if the land be in lease for years, courtesy may be without entry or receipt of rent, the possession of the lessee being the possession of the husband and wife. 2 Wend. Bl. 127, note. The law in regard to the tenure by courtesy has been still more liberalized in the State of New York, where it has been holden that, if the wife be the owner of wild, uncultivated lands, not held adversely, she is deemed seized in fact, so as to entitle her husband to his right of courtesy, although there has been no entry or *pedis possessio* taken of the same. *Jackson* v. *Sellick*, 8 J. R. 271. A constructive seizin in fact being all that the law requires; and certainly a more stringent rule would not be applied in this State.

The case at bar, we think, comes completely within this rule. Mrs. Rice was seized in law of the premises, and they were not held adversely. Indeed, Holton and Barlow, after the death of Haile, held as tenants at sufferance to her. The relation of

24 *

landlord and tenant existed between them; hence their possession was her possession. Being constructively seized in fact, an actual entry was unnecessary in order to entitle Rice to his courtesy in the premises.

We, therefore, think the judgment of the circuit court correct, and accordingly affirm it.