DANIEL M. GRIFFIN v. D. E. SHEFFIELD et al.          | 38   359|
                                                     |d71   51|

1. VENDOR AND VENDEE: HUSBAND AND WIFE: TENANT AT SUFFERANCE.—A purchaser in fee simple from the.,husband, of land belonging to the wife, is, after the termination of the husband's life estate by the curtesy, a tenant at sufferance of the wife if she be living, and of her heirs if she be dead; and he cannot, therefore, without surrendering the possession thus acquired, purchase in an outstanding paramount title so as to defeat the right of the wife, or her heirs. See *Day et al. v. Cochran,* 24 Miss. R. 261; Hutch. Dig. pp. 615 and 616, §§ 6 and 10.

2. EJECTMENT: BOTH PARTIES CLAIMING FROM SAME SOURCE: DEFENDANT CANNOT SET UP AN OUTSTANDING TITLE TO WHICH HE IS A STRANGER.—Where both parties in an action of ejectment claim title from the same common source, and the plaintiff has the older and better title from that source, the defendant cannot defeat his recovery, by setting up an outstanding paramount title, with which he has no connection.

3. SAME: SAME: OUTSTANDING TITLE BARRED BY LIMITATION NO BAR TO PLAINTIFF'S RECOVERY.—The defendant in an action of ejectment cannot defeat the plaintiff's recovery, by showing that he has purchased an outstanding title, which was barred by the Statute of Limitations, at the time of his purchase.

4. VENDOR AND VENDEE: HUSBAND AND WIFE: POSSESSION OF WIFE'S REALTY UNDER PURCHASE FROM THE HUSBAND: STATUTE OF LIMITATIONS —The possession of the wife's realty in which the husband is entitled to a life estate by the curtesy, by a grantee of the husband under a deed in fee simple, is in subordination, and not adverse to the right of the wife; and such possession, therefore, for the period prescribed by the Statute of Limitations, will bar, in favor of the wife, an outstanding title adverse to hers.

5. SAME: SAME: WIFE NOT BOUND BY COVENANTS IN DEED CONVEYING HUSBAND'S ESTATE.—A *feme covert* is not bound by the covenants of warranty contained in the joint deed of herself and husband conveying his estate; and she is not therefore estopped, at law, by such a deed from acquiring afterwards an interest in the land adverse to the interests of the grantee.

6. DEED: REGISTRATION: OFFICIAL SEAL NEED NOT BE RECORDED.—The Statute of Registration does not contemplate the recording of the impression of a public seal; and hence, it is no objection to the admission, in evidence, of a certified copy of a recorded deed, that a copy of the impression of the official seal of the officer who took the acknowledgment of the grantor does not appear on it, if it be stated in the body of the certificate of acknowledgment, that it was certified under such official seal.

7. EJECTMENT: EVIDENCE: COPY OF DEED FURNISHED WITH BILL OF PARTICULARS OF TITLE ADMISSIBLE.—A party to an action of ejectment may, without giving previous notice to produce the original, read in evidence a copy of a

deed belonging to his adversary, and which was furnished by the latter with his bill of particulars of his title, if the party furnishing the copy decline to produce the original upon request made at the trial.

ERROR to the Circuit Court of Copiah county. Hon. John E. McNair, judge.

This was an action of ejectment, commenced on the 9th October, 1858, by the defendants in error against the plaintiff in error, to recover a lot of land situated in the town of Hazlehurst, in Copiah county. The defendant below pleaded not guilty.

On the trial, it was admitted that the plaintiffs in the court below, were the children of Elijah Rogers and Catharine Rogers, except one of them, who was the child of said Catharine and her second husband, Harvey Kyle. The plaintiffs claimed title as heirs-at-law of said Catharine, who, it was shown, died in November, 1852. Elijah Rogers died about 20th November, 1844. Harvey Kyle died in January, 1856. Catharine Rogers and Harvey Kyle were married in November, 1846, and had issue born alive before the date of their deed to Perrett, in 1848.

Before the trial, the parties, in pursuance of the statute, furnished each other with a bill of particulars of their title-papers, a detailed statement of which will hereafter be set out.

Plaintiffs read in evidence, a certified copy of a recorded deed from Nancy H. King to Catharine Rogers, their mother, dated 2d September, 1843. This deed " grants, bargains, sells, and conveys the *locus in quo* (with other land), to the said Catharine Rogers and her heirs by Elijah Rogers, and assigns forever;" and then proceeds : " to have and to hold, the lands so as aforesaid conveyed unto the said Catharine Rogers, her heirs by Elijah Rogers, and assigns forever, without any let or hindrance from her the said Nancy H. King, her heirs, or any person or persons claiming or to claim the same, by, through, or under them, or any of them, hereby releasing and quitting claim for herself and her heirs forever, to any and every right, title, and interest in and to the premises aforesaid," &c.

The deed was acknowledged before the probate clerk of Copiah county, on the 18th October, 1843, and recorded on the same day.

Griffin *v.* Sheffield et al.

The certificate of acknowledgment concludes: "Given under my hand and official seal at Gallatin, this 18th October, 1843," and is signed by the probate clerk.

The certified copy offered in evidence contains no other reference to the seal of the clerk taking this acknowledgment than is above stated.

The defendant objected to the introduction of this copy as evidence, because it did not appear that the certificate of acknowledgment was certified under the official seal of the clerk who took it.

This objection was overruled, and the defendant excepted.

The plaintiffs then proved by John Chase that Catharine Rogers was in possession of the *locus in quo* all of the year 1843, and up to the death of her husband, Elijah Rogers, in 1844, and from that time to her marriage with Harvey Kyle (in November, 1846), when she left the place to reside with her husband, and that she cultivated it in 1847.

Plaintiffs then, for the purpose of showing that the defendant claimed title under said Kyle, introduced the following certified copies of recorded deeds:

1. A deed by Harvey Kyle and Catharine Kyle, his wife (formerly Rogers), to Henry Perrett, dated 15th January, 1848.

This deed purports to be an indenture of two parts. Kyle and wife are stated to be the parties of the first part, and Perrett the party of the second part, and conveys the land in fee simple to Perrett, in language exactly the same in substance as that contained in the deed of Nancy King, heretofore set out. It is not stated in the deed that the land conveyed, belongs either to Kyle or his wife, but they appear as joint grantors throughout the whole of the deed. The certificate of acknowledgment to this deed, so far as it relates to the husband, is regular, and so far as it relates to the wife, it is as follows:

"Also appeared at the same time and place, Catharine Kyle, wife of the above named Harvey Kyle, who, on an examination separate and apart from her said husband, acknowledged that she signed, sealed, and delivered the within and foregoing deed for the purposes therein specified, as her act and deed."

2. A deed of similar provisions to the above from said Perrett to Mary Jane Hudnall (wife of W. M. Hudnall), dated 28th January, 1850.

3. A warranty deed from said Mary Jane Hudnall and her husband to W. M. Haley, dated 7th October, 1852.

4. A warranty deed from W. M. Haley and wife to R. F. Mason, dated 7th April, 1853.

5. A warranty deed from said R. F. Mason to George H. Hazlehurst, dated 13th November, 1855.

6. A deed from said Hazlehurst to Wirt Adams, dated 12th March, 1858.

The plaintiffs then introduced John Perrett, who certified that he is the brother of said Henry Perrett (the grantee in the deed from Kyle and wife); that he was present when said Henry purchased from Kyle and wife; that nobody was then in possession of the land; that after the purchase-money was paid, and deed delivered, in March, 1848, said Henry put his sister (Frances Jordan) in possession as his tenant; that she remained in possession till January, 1850; that before she left, Jesse Hudnall moved on the place as tenant to said Mary Jane Hudnall (the grantee of Perrett), and after said Frances left, the said Mary Jane and her husband moved on the place.

The plaintiffs then offered in evidence a copy of a title bond by Wirt Adams (the grantee of Hazlehurst) to the defendant Griffin; this bond is dated 14th June, 1858. The defendant objected to the reading of this bond, because it was secondary evidence.

The plaintiffs' counsel then asked the defendant's counsel to produce the original, which the latter declined to do, upon the ground that he had had no notice to do so. The plaintiffs' counsel then read to the court the defendant's bill of particulars of his title papers, furnished to him as before stated.

This bill of particulars referred to all the foregoing deeds introduced by plaintiffs to show that the defendant claimed under Nancy King, as muniments of defendant's title. It also referred to the said bond of Adams to Griffin, a copy of which accompanied it. It also referred to the record and deed hereafter stated as offered by the defendant. It was then admitted by defendant's counsel, that the copy of the title bond of Adams offered by plaintiffs, was the same furnished to plaintiffs' counsel with the bill of particulars. The plaintiffs then proved to the court by one of the defendant's counsel, that the copy so offered in evidence was a true copy of the

original. The court then asked defendant's counsel if they would produce the original, which they declined to do. The court then permitted said copy to be read in evidence, and the defendant excepted. The *locus in quo* was embraced in all the foregoing deeds, and in the bond for title executed by Adams to the defendant.

The plaintiffs here rested their case.

The defendant then read to the jury the following:

1. A certificate from the United States Land Office, showing that the *locus in quo* had been entered by one Howard, on 31st August, 1837.

2. A warranty deed from said Howard to Elijah Rogers (the first husband of said Catharine), dated 11th March, 1837.

3. A record from the United States Circuit Court at Jackson in this State, showing that said Elijah Rogers had been duly discharged as a bankrupt, on the 29th May, 1843, and that in his schedule or list of property returned to the court, the land in controversy was not embraced.

4. A copy of the decree appointing F. S. Hunt commissioner in bankruptcy, and a deed executed by said Hunt as commissioner to Wirt Adams, dated 19th March, 1859, showing a sale of the land on that day to said Adams.

5. A mortgage, executed by said Elijah Rogers and Catharine Rogers, to the Mississippi Union Bank, dated 31st May, 1839, and conveying the *locus in quo*. This mortgage was executed to secure the payment of a bond for $10,100 executed by Rogers for stock in said bank, in case it should be needed for the payment of a loan of $10,500, which was expected to be obtained on the faith of the State; and also to secure the payment of the privileged loan provided for by the charter, for stockholders. The only covenant of warranty of title in the mortgage is that implied from the use of the words "grant, bargain, sell, and convey." The wife joins in the use of these words, though the land is stated to be conveyed in pursuance of an agreement to do so by the husband, who is termed the mortgagor. In the certificate of acknowledgment, Catharine Rogers is stated to be the "wife of the grantor."

6. A record of the proceedings in the nature of a *quo warranto* against the Union Bank, showing a judgment of forfeiture of its

franchise on the 7th of December, 1846, and the appointment of Anderson, Shelton, and Filler as trustees, and a deed dated 1st October, 1847, by Shelton, conveying said stock-bond and mortgage to Nancy H. King.

7. An assignment by Nancy King to Benjamin King of all her interest in the stock-bond and mortgage, dated 4th May, 1853.

8. A deed by Benjamin King to Wirt Adams, dated 22d March, 1859, assigning all of said King's interest in the land in controversy, acquired by the said transfer of the stock-bond and mortgage to him, by Nancy King.

9. A tax-collector's deed, dated 15th April, 1844, showing a sale of the land in controversy to Benjamin King, for the taxes of the year 1843, and an assessment of the land in the name of Nancy King.

10. A quit-claim deed of Benjamin King to Nancy King, dated September, 1846, conveying the land in controversy and other lands to her.

11. A quit-claim deed for the *locus in quo* by Nancy King to Caroline Hudnall, dated 25th December, 1849.

12. A quit-claim deed for the same from said Caroline and her husband, Jesse G. Hudnall, to Henry Perrett, dated 3d January, 1850. This deed recites that the purchase-money ($60) was paid by Harvey Kyle.

The defendant proved the loss of the stock-bond mentioned in the mortgage to the Union Bank, and proved its contents.

The defendant's counsel then admitted, in response to a question propounded by plaintiffs' counsel, that the said Nancy H. King, who was the grantor in the deed to Caroline Hudnall, was the same Nancy H. King who is the grantor in the deed to Catharine Rogers. Thereupon the court, upon motion of plaintiffs' counsel, ruled out and excluded from the jury all the evidence introduced by the defendant; and the defendant excepted.

The plaintiffs had verdict and judgment. The defendant moved for a new trial, which was refused, and he excepted, and sued out this writ of error.

The errors assigned here are,

1. The admission in evidence of the deed from Nancy King to Catharine Rogers.

2. The admission in evidence of the copy of the title bond of Wirt Adams to the defendant Griffin.

3. The ruling out by the court below of all the evidence offered by defendant.

4. The overruling defendant's motion for a new trial.

*Benjamin King*, for plaintiff in error.

The deed of Harvey Kyle and wife was a quit-claim deed, and could not have the effect to estop the defendant for the following reasons:

1st. Because, if it is true, as they insist, that said deed was insufficient to convey the title of Catharine Kyle, not being legally acknowledged, it was as to her void, or no deed; and being no deed, it is nothing, and therefore cannot estop her or her heirs, or the vendee or his assignees; and being put in evidence by them, they cannot disregard the deed as a deed to convey their ancestress's title, while they hold it to be a deed to estop us. *Blight's Lessee,* v. *Rochester*, 7 Wheaton, 535; *Hughes* v. *Clarksville*, 6 Peters (U. S.), 369; *Crosby* v. *Chase*, 5 Shep. 369; *Wheelock* v. *Henshaw*, 19 Pick. 341; *Sinclair* v. *Jackson*, 8 Cow. 543; *Wallace* v. *Miner*, 6 Ham. 366.

2d. Because it being a quit-claim deed, it does not estop the grantors, even if it were duly acknowledged, and if not duly acknowledged, it cannot estop the plaintiff in error, for the reason that all estoppels must be mutual, reciprocal, binding upon both or neither. *Jackson* v. *Wright*, 14 Johns. 193; *Wheelock* v. *Henshaw*, 19 Pick. 341; *Boyce* v. *Longworth*, 11 Ohio, 235; *Ham* v. *Ham*, 2 Shep. 351; *Bently* v. *Cleveland*, 22 Ala. 814; *Cohoes Co.* v. *Goss*, 13 Barb. 137; *Gardner* v. *Sharp*, 4 Wash. C. C. 609; *Callow* v. *Jenkinson*, 5 Eng. Law. and Eq. Rep. 533; *Miles* v. *Miles*, 8 Watts & Serg. 135; *Lansing* v. *Montgomery*, 2 Johns. 382; *Bolling* v. *Mayor*, 3 Rand. 563; *Averill* v. *Wilson*, 4 Barb. Sup. Ct. 180.

The doctrine that a vendee is estopped from denying his vendor's title is supported by many authorities; but if they be examined, I think it will be found that these authorities are based upon indentures, and not upon deed polls, or upon deeds of lease, where the relation of landlord and tenant actually existed, or upon a miscon-

ception of the true original of the doctrine of estoppel. The case of *Gill* v. *Fauntleroy*, 8 B. Monroe, 177, and the other Kentucky cases, have carried the doctrine of estoppel to a point which no other court, having in view that estoppels are not to be favored, ever carried it. These Kentucky cases hold that the relation of vendor and vendee is the same as that of landlord and tenant, or lessor and lessee. This is the English rule, brought down from feudal times; but this rule is inapplicable to the genius of our institutions and the intentions of the parties who buy and sell land. Law, good morals, and public policy, demand that the lessee shall not deny the title of his lessor, but does either demand that the vendee shall not deny the title of his vendor. When a vendor sells to a vendee, the latter holds the land, not for his vendor, but for himself and his own heirs; he holds adversely to his vendor. *Page* v. *Hill*, 11 Missouri, 149; *Kenada* v. *Gardner*, 3 Barb. Sup. Ct. 589; *Averill* v. *Wilson*, 4 Barb. Sup. Ct. 180.

This court has decided that in the case of vendor and vendee, the latter was not estopped from showing title out of the former at the time of the sale, and there are many of the most respectable authorities to the same point. *Wolfe* v. *Dowell*, 13 S. & M. 103; *Osterhout* v. *Shoemaker*, 3 Hill, 513; *Moore* v. *Parron*, 3 A. K. Marsh. 41; *Great Falls Company* v. *Worcester*, 15 N. H. 412; *Small* v. *Proctor*, 15 Mass. 495; *Blair* v. *Smith*, 16 Missouri (1 Bennett), 273; *Sparrow* v. *Kingman*, 1 Comst. 242; *Brinnegar* v. *Chaffin*, 3 Dev. 108; *Winlock* v. *Hardy*, 4 Litt. 272.

It is believed that the policy of the law is rather to restrict than favor the doctrine of estoppel. *Leicester* v. *Rehoboth*, 4 Mass. 180; *Bridgewater* v. *Dartmouth*, 4 Mass. 273; *Owen* v. *Bartholomew*, 9 Pick. 520.

*F. Anderson*, on same side.

The most important question involved in this case, is whether the plaintiff in error was estopped from showing that the plaintiffs had no title to the land sued for ?

The affirmative of this proposition is sought to be maintained mainly on the ground, that the defendant Griffin traced title through Henry Perrett, and that the latter went into possession as the tenant of Catharine Kyle, the ancestor of plaintiffs, under the deed of Kyle

and wife, executed January 18, 1848. This position is attempted to be sustained by reference to the case of *Day et al.* v. *Cochrane*, 24 Miss. R. 262.

The report of that case states, that the deed executed by the husbands conveyed whatever marital interests they had, but did not convey the fee simple interest of the wives. It is difficult to tell from the report of the case, whether the deeds were mere conveyances of the marital interest of the husbands, or whether they were as mere conveyances in fee, which failed to take effect by reason of defective execution by the married women. How far the case is applicable, in this respect, it is impossible to say; but at farthest, the principle maintained in that case, goes no farther than this, that in such case the possession of the vendee of the husband, after the death of the latter, is not adverse to the wife, so as to constitute a disseisin, and thus prevent a second husband from taking a tenancy by the curtesy, for the want of seisin in the wife. To carry the principle of the case further, and hold, that in a case such as this, the vendee enters as tenant of the wife, and cannot afterwards dispute her title, would be going much further than the court intended, and would, I respectfully submit, be in opposition to the plainest principles of justice and reason. Should the court be of opinion, that that case is not a settlement of the question against us, I ask attention to the following points:

In the case of *Blight's Lessee* v. *Rochester*, 7 Wheaton, 535, where it was attempted to estop a defendant from controverting the title of plaintiff's lessor, that is, of showing, not an outstanding title, but that plaintiff's lessors had no title because their ancestor, under whose seisin they claimed, was an alien; Chief Justice Marshall held, there was no estoppel. He said the principle of estoppel originates in the relation of lessor and lessee. The title of the lessee is, in fact, the title of the lessor. He comes in by virtue of it, holds by virtue of it, and rests upon it to maintain and justify his possession. It is a part of the very essence of the contract under which he claims, that the paramount ownership of the lessee shall be acknowledged during the lease, and the possession surrendered at its expiration. He cannot be allowed to controvert the title of the lessor without disparaging his own, and he cannot set up the title of another without violating that contract by which

he obtains and holds possession, breaking the faith which he has pledged, and the obligation of which is still continuing and in full force.

The rights of the vendor are intended to be extinguished by the sale, and he has no continuing interest in the maintenance of his title.

Again: if the vendor has actually made a conveyance, his title is extinguished in law as well as equity. If he has sold, but not conveyed, the contract binds him to convey; if he, after such a contract, brings an action of ejectment, he violates his own contract, unless the condition be broken by the vendee; and if it be, the vendee ought to show it.

Here the parties out of possession for a consideration by a quit-claim deed undertake to convey a fee simple; but the deed is in-operative as to the wife. It is either her deed, or it is not. If it is her deed, the title is out of her; if it is not, so far as the doctrine of estoppel is concerned, she is a stranger to it. It does not estop her, and as estoppels must be mutual, it cannot estop the other party.

The only ground on which the parties could be estopped from showing that there was no title in Mrs. Kyle is, by showing that they, or those under whom they claim, went into possession under and by virtue of her title, and with some obligation arising from contract or privity or good faith to maintain it; but nothing of that kind exists here.

Perrett either went in by an extinguishment of her title, or by a deed to which she was not a party, and therefore not holding under her or by virtue of her title. If her deed had been valid, there would have been no such estoppel. If not valid it is void, and is nothing, and Perrett cannot be presumed to have gone into posses-sion under it.

The most that can be said is, that Perrett took a deed from the husband, and it would have to be shown, that taking a deed from the husband estops a party from denying the title of the wife. It would not estop her from denying the husband's title, and how then, on account of any privity between husband and wife, could it estop him from denying hers.

In *Averill* v. *Wilson*, 4 Barbour Rep., it is held, that a person

taking a quitclaim or a warranty deed, does not estop him from denying that the grantor had title at the time of, or prior to, the deed. He holds adversely, and may strengthen and justify his own title, by foreclosing any other to protect his quiet enjoyment. In this case, the doctrine is also fully discussed, that a stranger, or one not a party to or bound by a deed, cannot take advantage of, or be affected by, an estoppel.

In *Sparrow* v. *Kingman*, 1 Comstock, 257, it was decided, that in an action of ejectment for dower against the grantee of the husband, by a quitclaim deed, or person holding under such grantee, the defendant is not estopped from showing that the husband was not seised of such an estate as entitled his widow to dower. It is held, in the same case, that had the husband conveyed by warranty deed, the wife was a stranger to it, or was not affected by it; and even if it were an estoppel in favor of the husband, it was not so in favor of the wife, on the ground that estoppels must be mutual.

It is stated by the witness Chance, that Mrs. Rogers was in possession of the premises all of the year 1843, and up to the death of her husband, Elijah Rogers, in 1844, when she left the place to reside with her husband, but cultivated it in 1847. Perrett states that the place was unoccupied in 1848, when his brother took possession.

The parties not being in possession then, make the quitclaim deed (as we think it is), which purports on its face to be a conveyance by Kyle and wife in fee. There is no proof whatever that Perrett took possession by the act of Mrs. Kyle, and under an estate or interest created by her, which has since terminated. In other words, he is not holding over, after the termination of an estate granted by her, which is all that can create a tenancy by sufferance.

It is well settled, that if one who has purchased an estate *per autre vie*, holds over, he does not become a tenant by sufferance of the person having the remainder, and the Statute of Limitations will commence running. *Jackson* v. *Schoonmaker*, 4 John. 398; *Clark* v. *Vaughan*, 3 Conn. 191; *McDowell* v. *Hall*, 2 Bibb. 610; *Duncan* v. *Wright*, 11 Leigh, 542; *King* v. *Mims*, 7 Dana, 267; *Magruder* v. *Stewart*, 4 How. 204.

There is nothing which can constitute a tenancy but the act and

agreement of the parties; and if there was any act or agreement of the parties, it was an act by which Perrett took a fee simple, and held adversely to the title of those who conferred it. *Smith* v. *Otley*, 26 Miss. 298; *Blight's Lessee* v. *Rochester*, 7 Wheat. 535; 1 Comstock, 257; 4 Barb. 180, quoted above.

A person must come to an estate by the act of the party, and then hold over, to constitute a tenancy at sufferance. 4 Kent, 117.

These views are not inconsistent with the case of *Day* v. *Cochran*, 24 Miss. The decision of that case only amounted to this: that the holding over of the alienee of the estate, by the curtesy, did not work a disseisin of the wife's estate, or a discontinuance thereof, or otherwise prejudice or affect the wife or heirs. See Hutch. C. 615.

The whole doctrine and principle of the case is founded on the idea, that the wife had a fee simple estate, and that the husband made a deed, by which it was sought to prejudice her seisin; and she could not be affected by it, because her name was mentioned in the deed, which was yet void as to her.

But when we propose to show that the wife had no estate, and no title, and then show that we claim under a deed from the husband, in which the wife's name is joined, and which, according to the argument on the other side, could only have operated, if effectual, to bar her dower,—how can it be said that we come in under the wife and are tenants to her? If there be such a tenancy at sufferance as is hinted at in the case in 24 Miss., the tenancy itself can only exist in the fact, that the wife had a fee simple title.

The next ground on which the testimony of defendant was ruled out, and which seemed to govern the court below, was that in tracing his title, the defendant read the assignment of the stock-bond and mortgage to Benjamin King, by Nancy King, in 1853, and the deed of the same by the latter to Adams, in March, 1859; and also read the deed of Benjamin King (who held under a tax sale), to Nancy King, of September, 1846, and her quitclaim to Caroline Hudnall, 3d January, 1850. Whereupon the court, ascertaining that this Nancy King was the grantor in the deed to Mr. Rogers, ruled out all of the evidence of defendant.

This was evidently founded on the idea, that all the title they supposed came into Nancy King's hands, enured to the benefit of

Catharine Rogers, on the ground of estoppel, arising out of her deed of September, 1843, to the latter, considering it as a warranty deed.

That it is not, we think clear.

It is admitted in the authority which holds that the words "grant, bargain, and sell," imply a warranty, that this rule only applies where the grantor has not shown the extent to which he intends to bind himself, but that when he has done so, there is no implied warranty. *Weems* v. *McCaughan*, 7 S. & M. 422.

And this, we understand, is admitted by counsel. In this deed, there is a clear showing, nor is it merely, as supposed, a part of the *habendum*. The object of that is to show the extent of the estate, conveyed as a fee simple by the words "to have and to hold to one and his heirs." But the words relied on in this case, though they follow this part of the deed, do not constitute a part merely of the *habendum*, nor have they any necessary connection. The words are after a period. "Without any let or hindrance from Nancy King, her heirs, or any person claiming by, through, or under them, &c., hereby releasing and quitting claim for herself and her heirs forever, to any right, title, or claim." The object of these words is manifestly to show the extent to which she intended to bind herself.

But whether we are right in this or not makes no difference, since so far as the facts (outside of the tax title) on which we rely to show title out of Catharine Rogers, viz., 1. The title in her husband; 2. The title in his assignee in bankruptcy; 3. The mortgage title to the Union Bank, are not affected by this principle. The only title which it can be pretended came into the hands of Nancy King, after her conveyance, is that of the Union Bank; but as she only purchased from the assignee of the Union Bank, and took an assignment of the bond and mortgage, this gave her no legal title which could enure to the benefit of her vendee, but only a right in equity to foreclose the mortgage. If a legal title still existed under the mortgage, it would be in the hands of the assignees of that bank; or if it be extinguished, it would be for the benefit of Elijah Rogers, who owned the fee, and conveyed it to the bank.

To dismiss the subject of the mortgage, then, there remained the fact that the certificate of entry conveyed the legal title to Howard, which he conveyed to Elijah Rogers; and which, undoubtedly, be-

came vested in Hunt, the assignee, in the' spring of 1843, before the conveyance to Mrs. Rogers. At the time of that conveyance there was no adverse possession to Hunt, except that of Rogers himself; for the possession of Mrs. Rogers in the spring and summer of 1843 was in law the seisin of her husband, who had the title. After 1847, Mrs. Rogers abandoned whatever possession she may have had in her individual right, and has not had it, nor has any one claiming under her, had it since. She has not therefore had any such adverse possession as would extinguish, by virtue of the Statute of Limitations, the title of the assignee for her benefit. If extinguished at all, it must be for the benefit of Elijah Rogers, or the persons in possession and claiming title, viz., the defendants, and those under whom they claim.

But if we suppose that there is no title in the assignee, or that such title is extinguished, and not for the benefit of the persons in possession, where did the title rest when it ceased to be in the assignee, which plainly shows that it is not, as it has never been, in Mrs. Rogers?

It may be answered to this, that the result is, that if title is shown in Rogers, the plaintiffs are entitled to recover. But the authority of the case of *Canzon* v. *Dorr,* 27 Miss. R. 251, cuts off this resource from the plaintiffs. They are not all, if any of them are, shown to be the heirs of Rogers; and if they were, they have not sued in any such right nor claimed in any such right. They are estopped from setting up his title; after having put their right to recover on the title of Mrs. Rogers, they will not be permitted to shift their ground, and assert that she had no title, and set up a different one.

But Mrs. Rogers entered into a warranty deed to the Union Bank with her husband, in 1839. We insist that the safe and correct rule in reference to warranties by married women, is that, while they are not personally bound by such covenants, yet they and those claiming under them are estopped from setting up any subsequently acquired title against such warrantors.

The rule is different, as we are aware, in New York; the decisions being founded there on the opinion of Ch. J. Spencer in *Clowes* v. *Vanderheydan,* 17 John. R. 167.

It will be seen, however, that the opinion in that case is very

brief, and merely states the principle without examining it. The rule is different however in Massachusetts, Ohio, Kentucky, and was in Virginia until changed by statute. Rawle 'on Covenants, 429, 430, *et seq.* ; *Floyd* v. *Massie,* 4 Bibb's Rep. 430 ; *Hill* v. *West,* 8 Ohio Rep. 226 ; *Fowler* v. *Spencer,* 7 Mass. 21 ; *Colcord* v. *Swan,* Ib. 291.

The case cited in 4 Bibb is one where I believe it will appear, that the wife was estopped by her conveyance with her husband, of *his* lands. And while it is true that the note to the text cited above from Rawle on Covenants is erroneous in stating that the decision in Ohio was upon a conveyance by the wife and husband of his land, yet the distinction between a conveyance with covenants of his or her lands is not made in the case, nor does it cut any figure in any of the cases I have examined.

Without discussing further the question of the mortgage to the Union Bank, I have only to add, that it is impossible to say that the legal title is barred by the Statute of Limitations, in favor of Mrs. Rogers or her heirs ; and certainly the twenty years which is required to presume its extinction had not elapsed at the time the suit was begun.

In conclusion, whether what is called a valid, subsisting, outstanding title, has been shown or not. It has been clearly shown that Mrs. Rogers did not have, and never has had any title whatever to the land in controversy, and the authorities are clear that this can be shown, except in a case where the defendant occupies the position of tenant, or is otherwise estopped from denying the title. *Doe* v. *Pritchard,* 11 S. & M. 336 ; *Wolfe* v. *Dowell,* 13 Ib. 102 ; *Smith* v. *Otty,* 26 Miss. 297.

The true rule established is, that the plaintiff need not go further in the first instance by way of showing a *prima facie* right, but then if the defendant be not estopped in one of the modes indicated in 26 Miss. 298, he can show that the person from whom both claim had no title.

When this is shown, and nothing more appears, the plaintiffs not showing even any such possessory right in themselves, or seisin of their ancestor, and casting of the seisin on them by descent, as will give a right of action, they must fail, on the well-established principle, that the plaintiff must recover on the strength of his own title.

In conclusion, I think it is perfectly clear in this case that the plaintiffs did not show that the defendants claimed under Mrs. Rogers, since the deed introduced for that purpose was a nullity, and under it the defendants could, and did, for aught that appears, claim only the title of Harvey Kyle, and as all the evidence tending to show that they claimed under Nancy King was stricken out; the plaintiffs showed no *prima facie* title even.

*John D. Freeman,* on same side,

Filed an elaborate brief in support of all the assignments of error, in which he relied upon the following authorities : *Weems* v. *McCaughan,* 7 S. & M. 422 ; Taylor's Landlord and Tenant, p. 9, § 14 ; Ib. pp. 11–12 ; §§ 1, 19–21 ; *Blight's Lessee* v. *Rochester,* 7 Wheaton, 535 ; *Robbins* v. *McMillan,* 26 Miss. 434 ; *Doe* v. *Pritchard,* 11 S. & M. 327 ; *Wolfe* v. *Dowell,* 13 Ib. 103 ; *Nixon* v. *Porter,* 34 Miss. R. 707 ; Rawle on Covenants, 318, 319,. 320, 321 ; *Dickenson* v. *Brown,* 9 S. & M. 130 ; *Bowman* v. *Cattlett,* 13 Ib. 149 ; *Smith* v. *Doe,* 26 Miss. R. 298 ; *Cantzon* v. *Dorr,* 27 Ib. 245 ; 1 Greenl. Ev. § 24 ; 5 Greenl. R. 227 ; 4 Barb. (S. C. R.) 180 ; *Planters' Bank* v. *Conger,* 12 S. & M. 527 ; *Sims* v. *Ross,* 8 Ib. 557 ; *Dennistoun* v. *Potts,* 26 Miss. R. 13 ; *Porter* v. *Douglass,* 27 Ib. 395 ; *Lacey* v. *Rockett,* 11 Ala. R. 1002 ; *Carr* v. *Hilton,* 1 Curtis Circuit Court Rep. 230.

*L. B. Harris,* for defendant in error.

I. When a person enters into possession of land under another, such person shall not be permitted while he remains in possession to dispute that title, and if such person acquire a title after entry, such person cannot set up the title so acquired to defeat the right of possession of the person under whom he entered ; and before he can set up a title so acquired, he is bound *bona fide* to give up possession and bring his action to try titles ; and this rule is not confined to cases of tenants in the common acceptation of that term. *Wilson* v. *Weathersby,* 1 Nott & McCord, 373.

It is a universal rule of law, as well as principle of policy and justice, that the possession shall be held according to the title under which it is taken. 2 J. J. Marshall, 469 ; 4 Dana, 287.

One who enters on land under a conveyance from the ancestor,

is estopped to deny the title of the heir in ejectment for the land. *Wall* v. *Hill's Heirs*, 1 Ben. Monroe, 291.

One who receives a conveyance from husband and wife of lands, the property of the wife, and enters and holds under that title (which conveyance is insufficient to pass the estate of the wife), cannot, after the death of the wife, deny the title of the heir of the wife in a suit brought by such heir to recover possession. *Jackson* v. *Streeter*, 5 Cowen, 531; *Jackson* v. *Hinman*, 10 John. 293; 3 B. Monroe, 619; 3 Dana, 289; 4 Dana, 264; 5 Dana, 232; 25 Wend. 389; *Day* v. *Cochran*, 24 Miss. Rep. 261. And if he purchase an outstanding title, he cannot set it up to defeat the title of the heir : 7 Johns. 188, note B.; *Drane* v. *Gregory's Heirs*, 3 B. Monroe, 623; and his alienees are bound by every estoppel that binds him : 4 Dana, 288; *Wildey* v. *Bonney*, 26 Miss. Rep. 35; and as he could not set up such a title while in possession, those coming in under him cannot. *Jackson* v. *Hardee*, 4 Johns. 211.

Tenants at sufferance are not entitled to notice to quit. *Jackson* v. *McLeod*, 12 Johns. 182.

II. Where parties claim from a common source, evidence showing that there is no title in the common source will not be admitted. 5 Cow. 529. They are privies in estate, and cannot deny the common source of title. 1 Sup. U. S. Dig. 652, § 31; 3 B. Munroe, 619; *Love* v. *Gates*, 4 Dev. & Bat. 363; 1 Sup. U. S. Dig. 617, § 307; *Douglass* v. *Scott*, 5 Ohio, 196; *Rochelle* v. *Benson*, Meigs, 6; 1 Iredell's Dig. 352, § 7; 26 Miss. R. 298; 28 Ib. 600; 6 Annual U. S. Dig. 219, § 76; 10 Ib. 233, § 28; Ib. 1855, 238, § 5.

If a defendant set up an outstanding title, it must be a present, subsisting legal title,—not one abandoned or barred by the Statute of Limitations. *Peck* v. *Carmichael*, 9 Yerg. 325. It is not a title, if the stranger's entry is barred by an adverse possession. *Griffith* v. *Dicken*, 4 Dana, 561. It must be such a title as the stranger could recover on in ejectment against either of the contending parties. *Hall* v. *Gittings, Junr's., Lessee*, 2 Harr. & Johns. 122; Adams's Eject. 247, n.

Mr. Harris also argued the sufficiency of the title acquired under the tax sale, bankrupt sale, and the Union Bank mortgage, and in-

sisted that they could not avail Griffin on this action, and that they conveyed no title in any one.

*W. P. Harris*, on same side, after stating the case, argued as follows:

From the foregoing statement of the condition of the title to the land in controversy, it appears that the case made by plaintiff's evidence, is that of a superior title to that under which the defendant entered and held possession at the institution of the suit; both titles having a common origin in Nancy H. King, or rather, that of the plaintiff being the original and absolute title, derived from Nancy H. King, and that of the defendant a derivative and dependent title, founded on that of the plaintiff's ancestor, Catharine Rogers, the grantee of Nancy H. King, the seisin of Catharine supporting all.

The superiority of the title of the heirs of Catharine Rogers over that founded on the joint deed of Catharine and her husband Kyle, which deed, owing to the want of the prescribed acknowledgment, operated only to pass the derivative life estate of the husband as tenant by the curtesy, which expired in 1856, by his death, is too manifest to require further elucidation. The plaintiffs were, on their evidence, entitled to a recovery, unless the defendant was in a situation to invoke the protection of a superior outstanding title, and could establish the existence of such superior title in a condition to be operative and available to him.

The deed from Nancy H. King to Catharine Rogers purports to convey a fee simple, and by force of the statute upon the subject of entail, did convey a fee simple absolute. The terms of the granting part or premises are,—grant, bargain, sell, convey, and confirm the lands described, unto Catharine Rogers, and her heirs by Elijah Rogers forever, to have and to hold to her and her heirs by Elijah Rogers forever. The subsequent words,—"without any let or hindrance from the grantor or her heirs, who release and quit-claim their title and interest," &c.,—do not affect the first part of the deed, which is an explicit grant of a fee tail in the lands, which by the statute is converted into a fee simple. The *habendum* yields to a clear intention and specific designation of the estate

granted by the premises or granting part of the deed. 4 Kent's Com. (last ed.) 523, 524; *Bush* v. *Cooper*, 26 Miss. 599.

It was the inheritance of the wife,—being an estate given to her in fee simple. This fee simple has never passed from her and her heirs, because the deed made by her and her husband Kyle to Perrett was not operative as to her, for want of the proper acknowledgment. The words of the acknowledgment are: "that she signed, sealed, and delivered the within and foregoing deed, for the purposes therein specified, as her act and deed." The essential part is wholly omitted, and no equivalent expression or word used to supply the omission. To hold it to be valid, would be to dispense with the statute.

We are, therefore, to treat it as the deed of the husband only, and operating to convey such interest or estate as he might lawfully convey.

The decisions are uniform, that where the deed is that of the husband in form or effect, whether it purports expressly to convey a life estate or a fee, whether declared inoperative on the wife's estate, because she does not join in the granting part, or is no party even in form or in effect by failing to acknowledge it, the position of the alienee of the husband is no better than that of the husband. It is only in those cases where the husband's deed would otherwise operate as a discontinuance, that the statute was intended to apply. Hutch. Code, 615.

In *Day* v. *Cochran*, 24 Miss. R., the form of the deed (see *Bank* v. *Rice*, 4 How. U. S. R.) was: " A., in right of his wife, conveys," &c. In *Wildy* v. *Bonney*, 26 Miss. R. 35, the conveyance was jointly husband and wife, conveying all right, title, and interest of both; and the same doctrine was applied by this court.

In *Flag* v. *Bean*, 5 Foster (N. H.) R. 49, the husband conveyed by deed in fee simple; and the cases are cited in which for want of granting words by the wife the deed is inoperative to convey her estates. In Kentucky and in this State, the want of the acknowledgment on privy examination, has precisely the effect as though the wife was no party to the deed, for the acknowledgment is the operative part of the conveyance as to her. The principle of the statute is, that the husband shall not prejudice the wife or her heir, by conveying her lands in any form. *Miller* v. *Shackleford*, 4 Dana

R. 286; 5 Ib. 240; *Wildy* v. *Bonney*, 26 Miss. R. 35; 5 Foster, 49; *Day* v. *Cochran*, 24 Ib.; *Love* v. *Taylor*, 26 Miss. R. 567; *Toulmin* v. *Heidelberg*, 32 Miss. R. 268.

The case in 5 Dana, 240, shows that such a deed may serve to show how the defendant claims; and this is common in practice, to show how defendant claims. The defendant stood, at the commencement of the suit, precisely in the attitude of the defendant in the case of *Day* v. *Cochran*, and the vendees in *Wildy* v. *Bonney;* and moreover, the title which they sought to set up in defence, was derived from Nancy H. King, subsequent to her conveyance to Catharine Rogers.

We contend, 1st, that the defendant and his landlord, Adams, and those from whom he claimed, are disabled from setting up a hostile claim to the lands, or from setting up an outstanding title to defeat the entry of the wife or her heirs; because they went into possession on a title founded on her seisin, and were possessed of an estate derived from and dependent on the estate of the wife, and their estate having determined by the death of Kyle, in 1856, they held as tenants at sufferance by the acquiescence of the heirs, and were bound to yield to the right of entry secured by the statute in such cases.

2d. That the title acquired after the commencement of the suit, cannot defeat the right of entry of plaintiffs.

3d. That the titles so acquired at the time of the suit brought, were inoperative, having lost the right of entry by lapse of time, and in fact become extinct, since neither party could have been evicted by them, as all remedy for possession and for title had been barred by a possession which had continued long enough to confer title.

4th. That the titles acquired by Nancy H. King, subsequent to her conveyance to Catharine Rogers, became extinct, or passed to her prior grantee, by force of her warranty.

5th. That the purchase by Kyle of the title of Caroline Hudnal, derived from N. H. King, was in aid of his conveyance to Perrett, and operated only to extinguish her claim, which was not even a valid claimer. It could only fortify the wife's title, if valid.

On the 1st point, the tenancy by the curtesy is a derivative estate, dependent on the estate of the wife. It is a continuation of

the wife's estate. The tenant is liable to the heir for waste. They are privies in estate. Preston on Estates, 517, 520, cited in note to Coke Litt. 2, note (L), at the close of title Curtesy, 654; 1 Lomax Dig. 85, 86 (2d edit.). The alienee of the husband holding over after his death, is a tenant at sufferance not holding adversely. His possession is the possession of the wife or her heir. *Day et al.* v. *Cochran,* 24 Miss. 261; 26 Ib. 35.

The tenant for life holding over, is under an obligation to surrender the possession to the reversioner or heir. The statute secures the right of entry to the wife and her heirs. There is a privity and obligation of fidelity to the wife's title. *Miller & Ross* v. *Shackleford,* 4 Dana, 286–7; 8 B. Monroe, 177; Ib. 323.

The law, operating on the contract of marriage, casts an estate and possession on the husband. This estate and possession are not independent and absolute, but derivative and dependent, in the strictest sense. It is founded on the seisin of the wife, and is supported by it. The seisin of the wife is not destroyed, and the statute has plainly put it out of the husband's power to destroy it. We express the idea by saying that there is a suspension of the wife's seisin and possession, in order to let in the husband to enjoy a derivative estate, founded on his marital right, in such manner that the wife's seisin and possession are affected only to the extent necessary to admit of the full enjoyment of the derivative estate, without any power in the husband or his alienee to give the derivative title any effect prejudicial to the principal estate. A dowress is estopped from denying her husband's title, and acquiring title against the heir. 1 Hilliard's Real Property, 162.

This intimate connection between the husband and his alienee, and the wife and her heir, is such as to preclude the husband and his alienee from resisting the entry of the wife or the heir, on the expiration of the tenancy for life, by interposing an outstanding title, or by purchasing such title. The rule seems to be, that to entitle the party in possession to buy in an outstanding title, he must be in possession under a hostile claim, or at least must hold adversely under a claim independent of the plaintiff's title. *Tucker* v. *Keeler,* 4 Vermont, 161. One heir entering into possession on the death of the ancestor, cannot oppose an outstanding title to the

entry of his co-heir, because they both stand on the same seisin in the ancestor.

The modern doctrine of estoppel, to resort to an outstanding title, limits the operation of the principle; or to speak by the authority of decisions, it excepts from the operation of the principle the case of a purchaser who has paid the purchase-money, and received an absolute deed in fee simple, because the grantor parts with all his estate, and the purchaser having paid is under no obligation to him, is not his tenant, and no relation of fidelity exists; such a purchaser may deny his grantor's title, and may set up an outstanding title, or buy it for his protection. But no attempt has been made to qualify the doctrine in its application to cases, where a party takes an estate which is a mere derivative incident to another estate, by which it is supported, and on which it is dependent. The principle of the statute, in regard to conveyance by the husband of the wife's inheritance, would be violated, if the husband or his alienee were allowed to make the possession acquired by virtue of her estate a point *d'appui* for employing or purchasing a hostile claim. 4 Dana, 286–7; *Meraman* v. *Caldwell's Heirs*, 8 B. Monroe, 32; *Gill* v. *Fauntleroy*, Ib. 177.

On the second point, the defendant in ejectment cannot defeat the plaintiff by purchasing an outstanding title after the suit is commenced, and clearly not when the outstanding title has lost the right of entry. 13 Mass. 472; 17 Missouri, 114; 6 Metcalf, 433; 10 Ib. 194.

It has been held, that if the plaintiff parts with his title before trial he cannot recover; but the rule is, that the action of ejectment turns on the right of entry at the time the suit is brought. Certainly an outstanding title, which had lost the right of entry, could not be made available after suit brought.

On the third point, the rule which allows the defendant in ejectment to set up an outstanding title in a third party, is based entirely on the fact that the right of entry is shown to be in another, and not in the plaintiff. Therefore, if the right of entry in the person holding the outstanding title has been tolled by descent cast, or by lapse of time, the bare existence of the superior title to the land, is not inconsistent with a right to possession, or the right of entry, in the plaintiff. *Griffith* v. *Dicken*, 4 Dana, 562.

Griffin *v.* Sheffield et al.

Hence the test of the availability of the outstanding title, which is invariably applied, is, can the holder of it evict both the contending parties? Hence the doctrine, that the outstanding title must be operative and subsisting, capable of being enforced. *Jackson* v. *Horden*, 4 John. 202; *Jackson* v. *Todd*, 6 Ib. 257; see also 1 Maryland R. 234; *Hunter* v. *Cochran*, 3 Barr, 105.

It should be borne in mind that the statute of this State, 1844, bars all actions to recover lands after seven years, and in ten years confers title in the possessor during that time; even the writ of right is taken away, so that a title becomes extinct, or entirely inoperative to evict either party after seven years, or ten years since 1854. The existence of such a title, therefore, would not constitute a breach of warranty; nor could the vendee, by purchasing it, entitle himself to be reimbursed for extinguishing it. A party in possession may fortify his title or possession by purchasing a title which he cannot resist; but he cannot be allowed to revive an extinct title which could not molest him.

Moreover, lapse of time will confer title on a party holding continuously and peaceably. *Ellis* v. *Murray*, 28 Miss. 129.

The possession of the husband and of his alienee is a continuation of the wife's seisin of her estate and her possession. Clearly this possession, if held for ten years, would confer title on her, or her heirs, who are in privity of estate with the husband.

In such a case, to allow the party holding over after the husband's death, as mere tenant at sufferance, to revive the outstanding title by buying it, would be giving him a sword to destroy an estate and title made perfect by operation of law, and not a shield for his protection. It would be most absurd to allow a defendant in the situation of the defendant here, to buy a title which could not be enforced.

Applying these principles to the case we have, it is perfectly obvious that the title of Hunt, the assignee, and that of Benjamin King as holder of the mortgage, were both extinct, or at least, both had lost the right of entry and the right to recover. They could not have been enforced at the time the suit was brought.

Nancy H. King conveyed to Catharine Rogers, 2d September, 1843, by absolute deed, for consideration paid, and at all events from Rogers's death, November, 1844. Catharine held possession

with this deed, down to her marriage with Kyle, in 1846, and up to 1848, when she and Kyle conveyed to Perrett, who conveyed to Mary Jane Hudnall. There was, therefore, the commencement of an adverse possession in Catharine from November, 1844, which continued in her and those claiming under her down to 1856 ; nay, down to the time the suit was brought. This possession was adverse to Elijah Rogers's mortgagee, the Union Bank ; adverse to the assignee in bankruptcy, whose title accrued on 29th May, 1843; adverse even to Nancy H. King. It is not important in this view to consider the question of the validity of mortgage or its character as between Rogers and the Union Bank, or the purchaser at the trustee sale, or whether it was barred as to Rogers and his heirs. Nancy H. King, a stranger, conveyed the land by absolute deed to Catharine Rogers, who was in a situation to receive it, and could hold and did hold adversely to both mortgagor and the assignee in bankruptcy, from September, 1843.

It appears that Catharine Rogers united with Elijah Rogers in the deed of mortgage to the Union Bank ; and that deed contains the words, grant, bargain, and sell, &c. ; but the acknowledgment to the deed speaks of her as the " wife of the grantor," and the recitals speak of him as the owner of the real estate, Record, p. 62, 63, and a subscriber for stock. The whole instrument, taken together, shows conclusively that she is a party to the mortgage only for the purpose of relinquishing her contingent right of dower. She is no party to the bond. The result is that she is not estopped, and would not be even if the deed contained express covenants for title, from acquiring an adverse title. 1 Greenlf. Evid. 30 ; See *Blair* v. *Harrison,* 11 Illinois, 384.

The defendants prove that Rogers was the owner at the date of the mortgage. The deed assumes all through it that Rogers is the mortgagor.

It is only in the cases where the wife conveys her own property, and is herself the grantor in fact, that express covenants by her are held binding, and then only by way of estoppel. The rule stated in Rawle on Covenants of Title, p. 429, 430, 431, applies to conveyances of the " wife's estate." The note citing the case of *Hill's Lessee* v. *West,* 8 Ohio, 226, and other cases, misquotes the opinion in the case, as will be seen by looking at the opinion. In

the opinion the language is, joins her husband in conveyance of "her" property; while the note has it, "his" property. It would be most absurd to hold that a wife joining her husband in conveying his estate, not as a grantor but merely to relinquish dower, should be held to be bound in any way by covenants in the deed. In this deed, however, there are no express covenants, and the wife is not the grantor or mortgagee, and is not so stated in the deed. Releases and deeds operating as relinquishments only, never create estoppels. Rawle, 420, 421.

No case can be found where the doctrine of estoppel has been held to apply to a married woman, unless in a conveyance of her estate she expressly warrants. All the cases referred to in the notes are of that character. Mr. Greenleaf, 1 Evid. 30, differs from Rawle. The wife, in joining to convey her husband's lands, does not pass an estate nor grant one. Her interest is not, in fact, an estate, and cannot be severed from the fee. It is a contingent right, which depends on her surviving her husband.

The relinquishment of this contingent right to her husband's mortgagee does not make her a party to the mortgage, nor in any sense operate to prevent her from subsequently acquiring an independent title from a paramount source.

The mortgage, however, is not of the character to be available to the holder. It is not to be supposed that the sale by the trustee gave any title to the assignee (purchaser), to the stock-bond and mortgage, so far as it was intended as a security for the bonds issued by the State. The very nature of the thing shows that this stock-bond with its mortgage could not become the property of the purchaser, so as to entitle him to have its obligations performed. Under the charter, the mortgage was only available as security for the bonds.

It was never contemplated that stock should be paid in. Hence, it stood simply as ultimate indemnity for the bonds—collateral security for their payment. They could not be severed from the plan and the institution, so as to be devoted to any other use than to provide for the principal and interest of the ten million loan. The plan failed, and the institution succumbed. The loan was not obtained; that is, the ten million loan; and, as to the five millions paid in by the State, if these mortgages are security for that, it

must appear that the present holder is the holder of these bonds, or some of them.

These mortgages were not assets so far as they stood as security for the loan of the ten millions. But they were intended to secure what is termed the privileged loan also. This was a loan by the bank to the stockholder or mortgagee. To this extent this mortgage may have been a security for such a loan if it was procured. But it does not appear that it was obtained, or if obtained, whether it is still due. (Rogers died in 1844.) Nor does it appear that the note given for this loan was sold, nor that the holders of the mortgage are entitled to it if it is still unpaid. The idea that this stock-bond and the security exists as property, with any right to enforce it in the purchaser from the trustee, is preposterous. It is expressly stated in the deed that it is to secure the ten million five hundred thousand dollars loan to be obtained. It never was obtained, as we all know. It was also to secure such loan as "he may receive" under the 31st section of charter. It does not appear that he received it, or if he did, that the debt was sold by the trustee, if it ever existed. This mortgage, therefore, is in no sense an an existing title in the defendant or any one else. It is the essence of sham.

The Bankrupt Law contains, in the eighth section, a limitation upon the right of the assignee to sue. He must sue in two years from the time his right accrued. *Pike* v. *Sewell*, 32 Maine, 245. Besides, the assignee, after title vests in him, is subject to the general statute of this State. If he has suffered the Statute of Limitations to run out in favor of a third party holding adversely to him and the bankrupt, he cannot restore the right by selling the claim, which had become extinct in his hands. In addition to this, it does not appear by the evidence, the record in bankruptcy, that a single creditor proved his debt; and it is manifest, that the suggestion of the seisin of Rogers, made in 1859, was not made by creditors; and that the assignee, whose office as to this estate had expired, was used as a mere instrument for the purposes of this suit. There is but one course to be pursued in regard to such a case. The bankrupt is estopped to assert title, unless he can show that his debts are all paid, and the assignee has lost his remedy, which, in the case of lands, is a loss of the estate where there has

Griffin *v*. Sheffield et al.

been an adverse possession. *Deadrick* v. *Armour*, 10 Humph. 588; 18 Ala. 286; 19 Ib. 404.

As to the mortgage, supposing it to be outstanding in King at the date of the suit, we cite *Hanna* v. *Renfro*, 32 Miss. R. 125; and *Hamilton* v. *Jones*, not reported, November term, 1849.

In regard, therefore, to these titles, it is manifest that neither of them could have been enforced against the defendant when the suit was brought; nor could either of them have been enforced against the plaintiff, who had a right of entry at that time. It would be monstrous to allow a tenant at sufferance, or any defendant, to purchase and interpose titles which could not have evicted him or the plaintiffs.

On the fourth point: Can the title acquired by Nancy H. King, under the sale for taxes due by her, be set up to defeat the title which she had previously conveyed to Catharine Rogers? The deed to Catharine Rogers contained by the statute a covenant, by force of the words grant bargain and sell, of seisin "of an indefeasible estate in fee simple, freed from incumbrances," &c. The premises, the granting part of the deed, is an explicit grant of a fee tail. The *habendum* part concludes with the words "without any let or hindrance from the grantor or her heirs; who release and quitclaim all their right, title, and interest," &c. The *habendum* never controls the granting part of the deed when the estate granted is there clearly indicated. The first part of the deed, when its terms are unambiguous, must control. The deed is not therefore a quitclaim, although the word quitclaim is used. The deed is to be construed most strongly against the grantor. See 4 Kent's Com. 523, 524, as to *habendum*.

We cannot reject the first part of the deed, which purports to convey an estate in fee; nor the covenants implied, because the *habendum* clause declares, that the estate so conveyed shall be held without let or hindrance from the grantor.

But even on the supposition that the subsequent words limit the covenant, to a covenant against the acts of the grantor only, it had the effect of passing the title acquired by the tax sale, for that was an incumbrance, a lien, created by her default.

The taxes were a personal charge on Nancy H. King. *Green* v. *Craft*, 28 Miss. R. 70; *Dunn* v. *Winston*, 31 Ib. 135. She could

not, therefore, avail herself of this incumbrance to defeat her own grant. The covenant against herself and her heirs, and those claiming under her, would pass this title. See Rawle on Covenants of Title, 239, 422.

We think, moreover, that the mortgage which she bought in 1847 passed also. Certainly this mortgage was extinguished, either by her previous conveyance to Catharine, or by her subsequent conveyance to Caroline Hudnall, by quitclaim. She had this mortgage when she conveyed to Caroline Hudnall, and being a mere claim for money, she released it by her deed, and it became extinct.

The tax title, if it now stood in Benjamin King, would be barred by the Statute of Limitations; and it is obvious, that when he conveyed to Nancy King, there was an adverse possession in Catharine Rogers, which rendered his deed void, and Catharine Rogers or her heirs can set up this, when that conveyance is brought in conflict with her title, as it was never recognized by her.

It is moreover clear, from the deed from Caroline Hudnall to Perrett, that Kyle, the husband, bought her title, or extinguished it for the benefit of his deed to Perrett. It was not competent for the husband to defeat his wife's title, by such an arrangement with his alienee, and the purchase operated to support his wife's title.

It may be further observed, that by the defendant's own showing, the land was not assessed to the real owner, who was the Union Bank, Elijah Rogers, or the assignee. We say according to his showing; but if assessed properly to N. H. King, she could not assert the title she acquired under the sale in opposition to her previous grant.

Nothing can be plainer to our minds than that the court below was correct in ruling out the evidence. On its face it was clearly inadmissible and insufficient on every conceivable ground. The defendant was estopped, and if not estopped, the titles he offered were on their face inoperative—mere rubbish.

As to the propriety of the motion to exclude, I say: the defendant of course did not pretend that those under whom he claimed, entered under the mortgage, or the title of Hunt, for they did not hold those titles when the suit was brought. They claimed title under Henry Perrett, by producing his deed and relying on it. They trace Henry Perrett's title through Caroline Hudnall back to

Nancy H. King, and thus reach her title as genuine, because the tax-deed on its face shows that the land was sold, in 1844, for taxes of Nancy H. King assessed to her in 1843, prior to her deed to Catharine Rogers; for the assessment, as the law stood, was made prior to July, 1843, while her conveyance to Catharine Rogers of the land thus incumbered took place 22d September, 1843.

When Harvey Kyle bought Caroline Hudnall's claim (3d of January, 1850), and had the deed made to Perrett, the latter held a deed from Kyle and wife, which he had accepted in January, 1848. The subsequent deed from Caroline Hudnall shows on its face that Kyle paid the purchase-money. This title, whatever its value, by virtue of Nancy H. King's warranty to Catharine Rogers, enured to Catharine Rogers, and consequently did not alter Perrett's relation to her title. He stood, therefore, upon her seisin, and his entry and possession was by her title. This was, therefore, purely a question of law arising upon the face of the title papers, and therefore a question exclusively for the courts; and when the deeds ascertain upon what title entry and possession stand, it is for the court to say how far the doctrine of estoppel applies.

But if we suppose that it was necessary to prove the character of Perrett's entry, it is shown that the plaintiff proved by John Perrett, that he was present when he bought the land of Kyle, in January, 1848, and that in March, 1848, Perrett put his sister Frances Jordan in possession as his tenant; by another witness, Chance, that Kyle and wife cultivated the land in the year 1847. The defendants, so far from controverting these facts, by their bill of particulars gave notice that they relied on the deed from Kyle and wife. If we are to overlook the effect of accepting a deed from Kyle and wife in 1848, the recital in the deed from Caroline Hudnall to Perrett of a date long subsequent, and the legal effect of the warranty of Nancy H. King upon the subsequently acquired title, the authorities establish the proposition, that where there is no contrariety in the evidence in regard to the title under which a party entered, "it is for the court to decide on the legal effect of the title papers, and whether the defendant had a right to rely on them." *Carrico* v. *McGee*, 1 Dana, 6 and 7.

The court pronounces on the effect of accepting a conveyance from husband and wife. 10 Johns. 435.

If it shall be said that the law does not determine the effect and value of the deed made in 1848, and that procured to be made to Perrett in 1850, the answer is, that the law decides on the value of the last deed and its legal effect, and it decides also whether Perrett, after accepting the title of Catharine Rogers, or of her husband, conveying her estate, was at liberty to purchase a hostile title.

The defendants did not offer any other evidence. They admitted that Nancy H. King was the grantor in both the deeds; in that of 22d September, 1843, and that of November, 1849. It is difficult to conceive how any evidence could affect the case as it stood. The estoppel arose on the face of the deed.

Indeed, it was understood that the whole case, so far as it was deemed necessary to develop it, was before the court, and the motion was resorted to as a means of presenting legal questions arising on admitted facts or written evidence of title.

In regard to the objection to the copy of the deed from Nancy H. King, as certified by the probate clerk, I say, that it is to be presumed that the certificate of acknowledgment was under hand and seal, 1st, because it says it was " given under my hand and seal," &c. ; 2d, because " it could not be legally recorded unless properly certified," and it was recorded. The defendants notified the plaintiffs that the deed was recorded, and it· obviously was recorded. But aside from these considerations, when we look at the statute, it does not seem to contemplate that the impression of the court seal shall be copied, and a scroll would not be a copy of it. It says, "shall record the same with the acknowledgments, or proof, and certificates written on or under the same, by entering them word for word in a fair hand." The recording of the " impression" of a public seal would be a curious undertaking.

But again, the objection was that the " copy offered contained a certificate which said under hand and seal, and yet omitted a copy of the seal;" that is to say, it is not a correct copy of what is recorded, and in this form the objection seems to be unintelligible.

It is well known, that in many cases, the impression of the court seal disappears, or is scarcely discernible in the original; all that remains is the certificate that it is under seal.

In regard to the objection to reading the copy of title-bond of

Wirt Adams, the doctrine as to notice to produce the original does not apply. Here the defendant had notified the plaintiff that he intended to rely on this title-bond as evidence on the trial; of course the plaintiff was not required to notify defendant to produce it. Whenever, by notice under a plea, or in any other form, either party has referred to an instrument which he intends to use on the trial, or which is involved in the pleadings, so as to lead the opposite party to suppose it will be produced, notice need not be given. See *Hammond* v. *Hopping*, 13 Wend. 505; *Carroll* v. *Peake*, 1 Peters, 18, 22; 3 Philips on Ev. (Cow. & Hill), 1198.

HARRIS, J., delivered the opinion of the court.

The defendants in error commenced their action of ejectment in the Circuit Court to recover the land in controversy.

By agreement of counsel it is admitted, that defendants in error are the heirs at law of Catharine Rogers by Elijah Rogers, except Martha Kyle, who is the daughter of the said Catharine by her last husband, Harvey Kyle.

The defendants in error claim to derive their title from the said Catharine Rogers, as her heirs at law, as against this defendant by estoppel.

For this purpose they show that at the time of her marriage with Harvey Kyle, and up to the conveyance by said Kyle to Perrett, under whom plaintiff in error holds possession, the said Catharine had been in possession of the premises, under a deed from Nancy H. King, dated the 2d September, 1843. That Harvey Kyle and wife (the said Catharine) attempted to convey the property in dispute to said Perrett, on the 18th January, 1848; but owing to defective execution the deed was void as to his wife, and Perrett became the purchaser, and took possession under Harvey Kyle alone. That Harvey Kyle having no other interest in the land except as tenant by the curtesy, on his death Perrett became tenant at sufferance to these defendants in error, the heirs of Catharine, who died before Harvey Kyle, her husband.

The controlling point in the case is, whether the plaintiff in error is estopped from asserting that the defendants had no title to the land sued for.

That the plaintiff in error is so estopped, we think is clear, upon two grounds appearing in this record.

The first is, that he and those under whom he claims went into the possession of the premises in dispute under purchase from Harvey Kyle. That the deed from Harvey Kyle and wife, under which he claims, being void as to the wife, conveyed only Kyle's life-estate as *tenant by the curtesy* of his wife (Catharine), which vested in him upon her death leaving issue ; and that the purchasers from Harvey Kyle at his death became tenants at sufferance of the defendants in error ; and cannot, therefore, during their permissive possession, either acquire an independant title that can avail them in this action, or dispute the title of Catharine Kyle, the ancestor of defendants in error, from whom they hold their possession as tenants.

To this point the case of *Day et al.* v. *Cochran,* 24 Miss. 261, is full and conclusive. It is there said, on general principles, *independent* of our act in relation to alienations of the wife's lands by the husband, and of lands held " by the curtesy," that it is well settled that where a party has gone into possession of lands under a lawful title, and after his right has expired, holds over, his possession, thus continued, will not be regarded as adverse to the party entitled to the reversion. For being once in by a lawful title, the law, which presumes no wrong in any man, will suppose him to continue upon a title equally good. Citing Black Com. 149, 150 ; *Varrick* v. *Jackson,* 2 Wend. 166 ; *Jackson* v. *Cairns,* 20 John. R. 301 ; *Doe* v. *Hall,* 2 Dow. and Ry. 38." It is then further said that the purchasers from the husbands, who occupied precisely the same relations to the estate, as the purchasers in this case on this point, " became tenants at sufferance" on the death of the husbands. " Their possession was not tortious as regarded the true owners of the reversion ; and was, consequently, not adverse or hostile to their right.

" If, upon the general law, there could be any doubt that the possession in this case was not adverse, our statutes dispel it. See Hutch. Code, p. 615, § 6, and p. 616, § 10."

Upon this ground, if it were even admitted that the plaintiffs in error have acquired a *perfect title* since the commencement of their tenancy, in opposition to the title of Catharine Kyle or Catharine

Rogers, it would avail them nothing in this action. They must yield the possession they have acquired under these parties, and those under whom they claim, before they can be heard to assert it.

The second ground upon which we think it is equally clear, that the plaintiffs in error are estopped from denying the title of defendants in error in this action, is, that this record shows that both parties claim to derive title from Nancy H. King, the same common source ; and it is not competent for either, to dispute that title without showing a better title *in themselves.*

It is admitted, as a general rule, that it is competent for a defendant in ejectment to protect himself in his possession by showing an outstanding title in another, upon the principle that the plaintiff in ejectment must recover upon the strength of his own title. This rule is as ancient as the action itself, and has its origin in the just presumption that the party in possession is either the true owner, or holds under the true owner, until the contrary is made to appear.

But the exception is almost as ancient as the rule, that when the plaintiff in ejectment shows that both parties derive their title from the same common source, and that he has the older and better title from that source, it is not competent for the defendant, after such acknowledgment of the title of the common source, to protect himself in possession by proving an outstanding title in a third person, *with which he shows no connection.* For, in such case, the law will presume from such acknowledgment on his part, that such title is vested in the common source, and enures to the benefit and support of the plaintiff's title.

The authorities to this point are numerous, and almost unbroken. Nor are the cases cited from 11 S. & M. 336; 13 Ib. 103; 26 Miss. R. 298, in conflict with this principle of estoppel. Adams on Ejectment, 33, and notes by Tillinghast, 33, 34, and numerous cases cited. *Doe ex dem.* v. *Saul,* 1 Jones Law R. (N. C.) 70; *Johnson* v. *Watts,* 1 Ib. 228; *Doe ex dem. Thomas* v. *Kelly,* 1 Ib. 374; *Paul* v. *Ward,* 4 Dev. R. (N. C.) 247; *Love* v. *Gates,* 4 Dev. & Batt. R. (N. C.) 363; *Norwood* v. *Morrow,* 4 Ib. 442; *Ives* v. *Sawyer,* Ib. 51; *Murphy* v. *Barnett,* 1 Car. Law Repos. 105; *Burgess* v. *Wilson,* 2 Dev. L. R. 306; *Lucas* v. *Cobb,* 1 Dev. & Batt. 34; *Foster* v. *Dugan,* 8 Ohio R. 106; 5 Ib. 197; *Cooklys* v.

*Perry*, 3 Ib. (New Series) 344; *Murphy* v. *Barrett*, 2 Murphy R. (N. C.) 251.

The same doctrine is held in New York and other States.

To obviate the effect of this principle under the proof in the record, the plaintiff in error relies upon the fact, that the land in dispute was patented to one Howard, and conveyed by him to Elijah Rogers, the first husband of the said Catharine, and ancestor of the defendants in error, except the said Martha Kyle. They then attempt to deduce title to themselves from the said Elijah Rogers; first, by a mortgage executed by him to the Union Bank, in which the said Catharine joined, dated 31st May, 1839, which was assigned to the said Nancy King, the common source, 1st Oct. 1847, under whom plaintiff in error claims by assignment, since the commencement of this action. And second, by virtue of proceedings in bankruptcy against the said Rogers, and a sale by the assignee, and purchase by Adams, under whom defendant holds. Said sale and purchase having been made also since the commencement of this suit.

Independent of other objections, needless now to be considered, it is sufficient to say, in relation to both of these sources of title, that they cannot avail the plaintiff in error here, because neither of said titles is capable of enforcement, on account of lapse of time.

The possession of defendants in error, up to the acquisition of these titles, at least, must be deemed to be the possession of the heirs at law of Catharine Rogers, which has been continuous and uninterrupted since 2d September, 1843. This possession has been adverse to the title of Elijah Rogers, and all holding under him. It is shown by the record to have commenced in his lifetime, and has continued for a period far beyond that prescribed by the statutes of this State, either to bar the action of ejectment, or to vest an absolute title with such possession. It is not, therefore, a present subsisting operative title, but in legal presumption has become extinguished. *Jackson ex dem. Klock* v. *Hudson*, 3 Johns. R. 375; *Jackson ex dem. Dunbar et al.* v. *Todd*, 6 John. R. 257; *Greenleaf's Lessee* v. *Birth*, 6 Peters, 302; *Peck* v. *Carmichael*, 9 Yerger R. 325.

That Catharine Rogers, the wife of the said Elijah, by joining

him in the conveyance of *his* estate to the Union Bank, and relinquishing her right of dower, cannot be farther affected than to operate a divestiture of her contingent interest therein,—we think is the safe rule to be deduced from the authorities on this point, cited in the briefs of counsel. In such case, she is neither bound by the covenants in the deed, nor estopped beyond *her* interest, at the time of conveyance or relinquishment.

We think there was no error in admitting the deed from Nancy King to Catharine Rogers. The statute does not seem to contemplate the recording the impression of a public seal.

Nor do we think the court erred in permitting the copy of the title-bond, from Adams to the defendant, to be read under the circumstances in proof. It could not have prejudiced the rights or interests of the defendant below, who must be presumed to have had the original in court, and might have produced it, if he desired its use, instead of the copy which he himself had furnished.

Let the judgment be affirmed.

NOTE.—It appears from the report of the case of *The Agricultural Bank of Miss.* v. *Rice et al.* 4 How. U. S. R. 225, that the deed referred to in the case of *Day* v. *Cochran*, 24 Miss. R. 261, as having been defectively executed by the wives of the grantors, was of this character. It purported to be a conveyance in fee simple, and was signed and sealed, and regularly acknowledged, by both husbands and wives; but in the premises it recited that it was an indenture made "between Wm. M. Phipps, *in right of his wife Martha*, and William R. Haile, *in right of his wife Mary*, and D. H. Gibson, *in right of his wife Sarah*," and the grantees named in it; and no other mention was made in the deed of the wives, and for this reason it was decided by the Supreme Court of the United States that the deed was inoperative as to the *femes covert*, and only conveyed the life estate of the husbands.