JOHNSON *v.* LANGSTON.

(Division A. Oct. 25, 1937.)

[176 So. 531. No. 32727.]

Cowles Horton, of Grenada, for appellant.

624

**T. W. Scott**, of Eupora, for appellant.

628

S. E. Turner, of Carrollton, for appellee.

630

Smith, C. J., delivered the opinion of the court.

On December 2, 1935, the appellee instituted an unlawful entry and detainer proceeding against the appellant

for the recovery of the possession of land alleged to be unlawfully withheld from her by the appellant. The case reached the court below on appeal thereto, where it was tried by agreement by the judge without a jury, resulting in a judgment awarding the possession of the land to the appellee.

The record presents several very interesting questions, but the answer we have to make to one lying at the threshold thereof renders it unnecessary to consider the others.

The land came into the ownership of the appellee and a sister of hers, under the will of their father, in January, 1933. It was rented to the appellant for the year 1934 under an oral contract therefor. At the end of the year the appellant failed to surrender possession of the land and refuses so to do. On November 26, 1935, the appellee received a deed from her sister to her interest in the land.

The appellant's claim to the right to continue in possession of the land is founded on a sale of the land for taxes to the Corinth State Bank in 1931, and the purchase thereof by him from the bank; and he says that, because of the fact that the sale for taxes was made before the beginning of his tenancy, he had the right to purchase the land from the purchaser at the tax sale and to assert the title thereby acquired against his landlord. This may be true, but he is without the right so to do until he has surrendered possession of the land to his landlord, pursuant to his rental contract therefor. When he has done this he may assert any title he has to the land under his tax sale purchase in a proper proceeding therefor. 2 McAdam on Landlord and Tenant (5 Ed.), 1477; 35 C. J. 1239; Rives v. Nesmith, 64 Miss. 807, 2 So. 174; Love v. Law, 57 Miss. 596; Griffin v. Sheffield, 38 Miss. 359, at page 390, 77 Am. Dec. 646; Wolf v. Johnson, 30 Miss. 513. Cf. Rhyne v. Guevara, 67 Miss. 139, 6 So. 736. But the appellant says that the appellee con-

sented to his purchase of this outstanding title and is therefore estopped from objecting to his here setting it up against her. The facts on which this contention is based are: The land was rented to the appellant by Sealey, a brother of the appellee, acting for and in her behalf. Before the appellant purchased the land from the Corinth State Bank he had a conversation with Sealey in which Sealey told him "to go ahead and buy it or rent it, said it was going back to the state; that they wasn't going to pay any more taxes on it." The statement that it was going back to the state evidently refers to the fact that after the purchase of the land by the Corinth State Bank it was again sold to the state for taxes, from which the appellant redeemed the land after his purchase from the Corinth State Bank.

We will assume, but merely for the purpose of the argument, that, if Sealey was authorized by the appellee to make this statement, it would here estop her from complaining of the assertion by the appellant of the title, if any, acquired by him under his purchase of the land from the Corinth State Bank; the contention cannot prevail here for the evidence does not disclose that Sealey was authorized to make the statement. There is no evidence that he was expressly authorized by the appellee to make it, and the only evidence of the scope of his agency for her is that in answer to the question, "who had been managing and controlling it," the appellee replied: "I had in a way—I mean her interest (referring to her sister's interest), but I had my brother (meaning Sealey) look after it down here for me." This is insufficient to disclose that Sealey was in any way authorized to deal with her title to the land or surrender any rights she had thereunder.

Affirmed.